UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHERYL DAVIS, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 05-1423 (HHK) |
| | ) |
| MICHAEL CHERTOFF, SECRETARY, | ) |
| U.S. DEPARTMENT OF HOMELAND SECURITY, | ) |
| | ) |
| Defendant. | ) |
| | ) May 30, 2006 |

## DECLARATION OF CHERYL DAVIS

1.  My name is Cheryl Davis and I am the Complainant in the above referenced case. I am over 21 years old and understand the oath that I am taking to tell the truth under penalty of perjury.

2.  In 1984 I was hired by Federal Protective Service (FPS) as a Federal Police Officer, GS-4. I am currently a Criminal Investigator, GS-12, in the Federal Protective Services of the Department of Homeland Security.

3.  On April 11, 2001, my government issued weapon was stolen from my car which was parked in my driveway. In May 2002, some 13 months after the incident, I was issued a record of infraction. In July 2002, 15 months after the weapon was stolen, Deputy Director Dean Hunter, proposed a 30 day suspension for failing to properly secure my weapon. On July 25, 2002, Director Andre Jordan, issued me a 14 day suspension. He mitigated my suspension for a lapse of time of 15 months between the date of the incident and the date of the proposed action.

4.  Male officers who reported their weapons lost or stolen before me were not disciplined. Similarly, male officers who were not disciplined for over 1 year after the infraction were not disciplined either. When I was proposed for suspension I provided FPS with the above mentioned information, including the names of the officers and a description of the incidents. FPS has access to this information itself through its personnel records and internal databases. However, FPS issued me a harsher penalty for my infraction because of my gender.

5.  As a part of my duties as a Criminal Investigator I was trained to investigate stolen or missing property, including weapons, using the FPS resources.

6.  To locate a stolen or missing weapon FPS employees can contact the Range Master, and

1

get information about who was issued the weapon, when the weapon was issued, the physical description of the weapon including serial number and the location of the weapon including whether the weapon was lost or stolen. Information regarding the disposition of a weapon is stored indefinitely.

7.      Once FPS finds the name of the employee who was issued the stolen or missing weapon, it can view that employees file to determine whether the person was disciplined. When a FPS employee is suspended or terminated, that record of discipline remains in their file indefinitely.

8.      If the Range Master is unable to provide the name of the employee who lost his weapon, then FPS can use the serial number for the weapon to determine which employee was issued that weapon by looking in the National Crimes Information Center (NCIC) database. This database contains information about the date the weapon was stolen or missing and the Agency case number for the incident report.

9.      Once the Agency recovers the case number for the incident report, they can go to the Agency case tracking section and retrieve the actual incident report. The incident report names the employee who reported their weapon missing or stolen, the date and location from which it was stolen etc.

10.     FPS can use the name of the employee from the incident report and see if the employee who reported his weapon missing or stolen was disciplined. A record of suspension would remain in the employee's file indefinitely.

11.     As an FPS employee with 22 years of service and a former union shop stewardess, I am also aware that personnel files of FPS employees contain the record of infraction and the notice of proposed action. The record of infraction includes the date and description of the incident, the adverse action taken or recommended and the name of the supervisor. The notice of proposed action also provides the date and description of the incident and the proposed action.

12.     Therefore, a review of the record of infraction would reveal the lapse of time between the date of the incident and the date the record of infraction was issued. Similarly, a review of the proposed notice of action would reveal the lapse of time between the date of the incident or infraction and the date of the proposed action, including whether the disciplinary action was mitigated for a lapse of time.

13.     When I was proposed for suspension, I told the Agency that I felt I was being discriminated against because I was a woman. My male co-workers Larry Phelps, Russell Malloy and Andrew Hockett only had to file incident reports for losing their weapon. I also reminded the Agency that Jerry McGill, a male criminal investigator, was not disciplined for a DUI while driving a government vehicle in Glynco for a lapse in time of 6 to 9 months. The Agency could have looked into their records and been lenient as it was with its male employees. But they upheld their decision to suspend me nonetheless.

I have carefully read the foregoing and swear that it is true and correct under the penalty of perjury.

_____          _____5/30/06_____
Name                                              Date