## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CHERYL DAVIS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | **Civil Action No.  05-1423 (HHK)** |
| | ) | |
| **MICHAEL CHERTOFF, SECRETARY** | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, by undersigned counsel, respectfully moves the Court, pursuant to Rules

12(b)(1), 12(b)(6) and Rule 56 of the Federal Rules of Civil Procedure, for an order dismissing

the Plaintiff's claims in this action on the grounds that the Court lacks subject matter jurisdiction

over Plaintiff's claims and that Plaintiff has failed to state a claim upon which relief can be

granted.  In the alternative, Defendant asks for an order granting summary judgment on the

grounds that no genuine issue of material fact exists and the Defendant is entitled to judgment as

a matter of law.  In support of this Motion, the Court is respectfully referred to the accompanying

Memorandum of Points and Authorities, Statement of Material Facts Not in Dispute and

Exhibits.  A proposed order is also attached.

Respectfully submitted,

___/s/_____

KENNETH L. WAINSTEIN, D.C. Bar # 451058

Assistant United States Attorney

___/s/_____

RUDOLPH CONTRERAS, D.C. Bar # 434122

Assistant United States Attorney

___/s/_____

WYNEVA JOHNSON, DC Bar #278515

Assistant United States Attorney

Judiciary Center Bldg.

555 4th Street, N.W., Civil Division

Washington, D.C. 20530

(202) 514-7224

OF COUNSEL:

Katherine Johnson

Associate Legal Advisor

Office of the Principal Legal Advisor

U.S. Immigration and Customs Enforcement

U.S. Department of Homeland Security

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CHERYL DAVIS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-1423 (HHK) |
| | ) | |
| **MICHAEL CHERTOFF, SECRETARY** | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS
## AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 108(h), the Defendant hereby submits his statement of material facts as to which there is no genuine issue.

**Employment History**

1. The Plaintiff has been employed as a GS-1811 Criminal Investigator with the Federal Protective Service ("FPS"), National Capital Region, Immigration and Customs Enforcement ("ICE"), Department of Homeland Security ("DHS") since March of 1991. Plaintiff's Deposition, pp. 7:16 through 8:9, Exhibit 8. She was promoted to the GS-12 level in 2001. Plaintiff's Deposition, p. 8:9, Exhibit 8.

2. At all times relevant to this complaint, Ronald Blocker, was the Special Agent in Charge, Criminal Intelligence & Investigations Section, Federal Protective Service, National Capital Region. Blocker Affidavit, dated February 27, 2003, p. 1, Exhibit 9. He was the

Plaintiff's immediate supervisor. Davis Affidavit, dated January 31, 2003, paragraph 3A, Exhibit 10.

**Temporary Reassignment**

3. In January of 2003, the Plaintiff accessed confidential, private personnel information, to include disciplinary actions and promotions of other employees, from her government computer. Plaintiff's Deposition, pp. 33:1-10; 66:22 to 67:25; 68:6 to 9, Exhibit 8; OIG Report, dated April 9, 2003, Exhibit 13. She copied this information onto her own user drive. OIG Report, Exhibit 13. The Plaintiff shared this information with several members of her office. Plaintiff's Deposition, p. 37:12 to 17, Exhibit 8; Affidavit of Ronald Blocker, dated April 25, 2003, p. 1, Exhibit 11.

4. Several of the Plaintiff's co-workers complained to Ronald Blocker about Plaintiff's actions in accessing and disclosing private personnel information. Affidavit of Ronald Blocker, dated April 25, 2003, p. 1, Exhibit 9; Declaration of Ronald Blocker, August 24, 2006 , ¶ 3, Exhibit 12; Plaintiff's Deposition, pp. 48:11 to 49:20, Exhibit 8.

5. After learning of the Plaintiff's accessing and disclosing of private information, Ronald Blocker moved the Plaintiff to another part of the office, took away her computer access, and did not assign her any new investigative work pending investigation into the misconduct. See Blocker Affidavit, dated April 25, 2003, pp. 1-2, Exhibit 11; Blocker Declaration, dated August 24, 2006, ¶ 3, Exhibit 12. Such temporary reassignment pending an investigation was in accordance with Agency policy and past practices. Declaration of Francine Anderson, dated August 18, 2006, ¶5, p. 2, Exhibit 14.

6. The Plaintiff was not formally or officially or permanently reassigned in January of 2003. Plaintiff's Deposition, pp. 68:24 to 69:1, Exhibit 8; Blocker Affidavit, dated April 25,

2003, pp. 1-3, Exhibit 11; Blocker Declaration, dated August 24, 2006, ¶3, pp. 1-2, Exhibit 12.

She remained in the Criminal Investigations Section. Blocker Affidavit, dated April 25, 2003,

pp. 1-3, Exhibit 11; Blocker Declaration, dated August 24, 2006, ¶3, pp. 1-2, Exhibit 12.  She

remained in the position description of criminal investigator and received full Law Enforcement

Availability Pay (LEAP), equivalent to 25% of her base pay.  Blocker Declaration, dated August

24, 2006, ¶ 3, pp. 1-2, Exhibit 12; Plaintiff's Deposition, pp. 60:4 to 23; 69:2 to 6, Exhibit 8.

     7.  After issuance of the letter of warning on May 7, 2003, the Plaintiff was returned to

her usual duties.  Plaintiff's Deposition, pp. 34:24 to 35:10, Exhibit 8; Blocker Declaration,

dated August 24, 2006 , ¶8, Exhibit 12.  The temporary reassignment lasted 4 to 5 months.  Id.

### Letter of Warning

     8.  The Plaintiff's alleged misconduct was referred to the Office of Inspector General

(OIG) for investigation on January 21, 2003 by Patrick Moses, Acting Deputy Director.  See

Referral Letter, Exhibit 13.  The OIG accepted the case for investigation on January 22, 2003

and issued a report on April 9, 2003.  See Referral Letter and Report of Investigation, Exhibit 13.

     9.  After Ronald Blocker received the report and gathered some additional information,

he issued the Plaintiff a Notice of Infraction or GSA Form 225 on April 28, 2003.  Blocker

Declaration, August 24, 2006, ¶¶ 5-6, Exhibit 12; GSA Form 225, Exhibit 15. The Plaintiff

replied to the Notice of Infraction on April 28, 2003.  Exhibit 16.

     10.  After Blocker considered all the evidence, including the Plaintiff's response, he

issued her a letter of warning on May 7, 2003.  Blocker Declaration, August 24, 2006, ¶¶ 5-6,

Exhibit 12; Letter of Warning, dated May 7, 2003, Exhibit 17.

     11.  A letter of warning is the least severe form of corrective action.  Anderson

Declaration, dated August 18, 2006, ¶6, p. 2, Exhibit 14; GSA Order OAD P 5410.1, p. 114,

paragraph 111, Exhibit 18; GSA/NCR Human Resources Division, Disciplinary Desk Guide, p. 4, Exhibit 19; Blocker Declaration, August 24, 2006, ¶6, Exhibit 12. A letter of warning remains in an employee's personnel folder for a period of one year and then is removed. Anderson Declaration, dated August 18, 2006, ¶6, p. 2, Exhibit 14; GSA Order OAD P 5410.1, p. 114, paragraph 111, Exhibit 18; GSA/NCR Human Resources Division, Disciplinary Desk Guide, p. 4, Exhibit 19.

12. The Plaintiff had a recent disciplinary action, a 14-day suspension for violation of regulations where the safety of persons or property is endangered. See Proposal Letter, dated June 18, 2002, Exhibit 23; Decision Letter, dated July 25, 2002, Exhibit 24; SF-50s, Exhibit 25. The applicable GSA regulations permit an enhanced penalty for a second offense. GSA Order PAD P5410.1, pp. 118-119, paragraph 120, b-e, Exhibit 18; Table of Penalties, Exhibit 19, Item 28; Blocker Declaration, August 24, 2006, ¶6, Exhibit 12.

Respectfully submitted,


/s/ _____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
Assistant United States Attorney


/s/ _____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


/s/ _____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
Judiciary Center Bldg.
555 4th Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-7224


OF COUNSEL:
Katherine Johnson
Associate Legal Advisor
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CHERYL DAVIS, | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| v. | ) | Civil Action No.  05-1423 (HHK) |
| | ) | |
| MICHAEL CHERTOFF, SECRETARY | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOMELAND SECURITY, | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, Michael Chertoff, Secretary of the Department of Homeland Security, by his undersigned attorneys, submits this memorandum of points and authorities in support of his motion to dismiss or, in the alternative, for summary judgment.

The Plaintiff alleges that the Defendant retaliated against her when the Defendant "cited her for accessing confidential personnel information and reassigned her to a less desirable area and relieved her of her case processing duties." Amended Complaint, p. 4.[1] "The Plaintiff further alleges "her coworkers who accessed the very same information were not even cited for the incident and the difference in treatment was motivated by management's animosity toward Plaintiff because of her filing the prior EEO complaint. Id.

Defendant moves to dismiss or, in the alternative,  for summary judgment because Plaintiff cannot establish a prima facie case of retaliation. Plaintiff cannot show the requisite

---

[1]On August 23, 2006, the Plaintiff filed an amended complaint and withdrew her claim that she had been subjected to discrimination based on sex when she received a 14 day suspension.

adverse action for a temporary reassignment and letter of warning that she received. Even if the Plaintiff could establish a prima facie case, the Defendant has articulated legitimate, non-discriminatory reasons for its actions, and the Plaintiff cannot show that these actions are pretextual.

**Defendant's statement of material facts is incorporated herein.**

**Procedural History**

The Plaintiff, Cheryl Davis, contacted the EEO Office on July 26, 2002, and alleged that she was discriminated against based on race, sex, and reprisal when she was suspended for 14 days and her GS-12 promotion was delayed. EEO Counselor's Report, Exhibit 1. She filed a formal complaint on September 6, 2002. Exhibit 2. On September 11, 2002, the Agency accepted the complaint for investigation. Exhibit 3.

The Plaintiff contacted the EEO Office again on January 28, 2003, and alleged that she was subjected to reprisal when she was reassigned to administrative duties with no computer privileges in a different section, when her co-worker was allegedly threatened for giving her a ride in his government vehicle, and when she was required to take leave after reporting late to work. Exhibit 4. She filed a formal complaint with respect to this claim on March 1, 2003. Exhibit 5. On March 4, 2003, the Agency accepted the complaint for investigation. Exhibit 6.

**Employment History**

Plaintiff has been employed as a GS-1811 Criminal Investigator with the Federal Protective Service ("FPS"), National Capital Region, Immigration and Customs Enforcement ("ICE"), Department of Homeland Security ("DHS") since March of 1991. Plaintiff's Deposition, pp. 7:16 through 8:9, Exhibit 8. She was promoted to the GS-12 level in 2001. Plaintiff's Deposition, p. 8:9, Exhibit 8.

At all times relevant to this complaint, Ronald Blocker, was the Special Agent in charge, Criminal Intelligence & Investigations Section, Federal Protective Service, National Capital Region. Blocker Affidavit, dated February 27, 2003, p. 1, Exhibit 9. He was the Plaintiff's immediate supervisor. Davis Affidavit, dated January 31, 2003, paragraph 3A, Exhibit 10.

**Temporary Reassignment**

In January of 2003, the Plaintiff accessed confidential, private personnel information, to include disciplinary actions and promotions of other employees, from her government computer. Plaintiff's Deposition, pp. 33:1-10; 66:22 to 67:25; 68:6 to 9, Exhibit 8; OIG Report, dated April 9, 2003, Exhibit 13. She copied this information onto her own user drive. OIG Report, Exhibit 13. The Plaintiff shared this information with several members of her office. Plaintiff's Deposition, p. 37:12 to 17, Exhibit 8; Affidavit of Ronald Blocker, dated April 25, 2003, p. 1, Exhibit 11.

Several of the Plaintiff's co-workers complained to Ronald Blocker about Plaintiff's actions in accessing and disclosing private personnel information. Affidavit of Ronald Blocker, dated April 25, 2003, p. 1, Exhibit 9; Declaration of Ronald Blocker, dated August 24, 2006 , ¶3, Exhibit 12; Plaintiff's Deposition, pp. 48:11 to 49:20, Exhibit 8.

After learning of the Plaintiff's accessing and disclosing of private information, Ronald Blocker moved the Plaintiff to another part of the office, took away her computer access, and did not assign her any new investigative work pending investigation into the misconduct. See Blocker Affidavit, dated April 25, 2003, pp. 1-2, Exhibit 11; Blocker Declaration, dated August 24, 2006, ¶ 3, Exhibit 12. Such temporary reassignment pending an investigation was in accordance with Agency policy and past practices. Declaration of Francine Anderson, dated August 18, 2006, ¶5, p. 2, Exhibit 14.

The Plaintiff was not formally or officially or permanently reassigned in January of 2003.
Plaintiff's Deposition, pp. 68:24 to 69:1, Exhibit 8; Blocker Affidavit, dated April 25, 2003, pp.
1-3, Exhibit 11; Blocker Declaration, dated August 24, 2006, ¶3, pp. 1-2, Exhibit 12. The
Plaintiff remained in the Criminal Investigations Section. Blocker Affidavit, dated April 25,
2003, pp. 1-3, Exhibit 11; Blocker Declaration, dated August 24, 2006, ¶3, pp. 1-2, Exhibit 12.
She remained in the position description of criminal investigator and received full Law
Enforcement Availability Pay (LEAP), equivalent to 25% of her base pay. Blocker Declaration,
dated August 24, 2006, ¶3, pp. 1-2, Exhibit 12; Plaintiff's Deposition, pp. 60:4 to 23; 69:2 to 6.
Exhibit 8.

### Letter of Warning

The Plaintiff's alleged misconduct was referred to the Office of Inspector General (OIG)
for investigation on January 21, 2003 by Patrick Moses, Acting Deputy Director. See Referral
Letter, Exhibit 13. On January 22, 2003, the OIG accepted the case for investigation. The OIG
issued a report on April 9, 2003. See Referral Letter and Report of Investigation, Exhibit 13.

The OIG's report was forwarded to Ronald Blocker. Mr. Blocker gathered some
additional information. On April 28, 2003, he issued a Notice of Infraction, a GSA Form 225, to
Plaintiff. Blocker Declaration, August 24, 2006, ¶¶ 5-6, Exhibit 12; GSA Form 225, Exhibit 15.
The Plaintiff replied to the Notice of Infraction on April 28, 2003. Exhibit 16.

Mr. Blocker considered all the evidence, including the Plaintiff's response, and issued a
letter of warning to Plaintiff on May 7, 2003. Blocker Declaration, dated August 24, 2006, ¶¶
5-6, Exhibit 12; Letter of Warning, dated May 7, 2003, Exhibit 17.

A letter of warning is the least severe form of corrective action. Anderson Declaration,
dated August 18, 2006, ¶6, p. 2, Exhibit 14; GSA Order OAD P 5410.1, p. 114, paragraph 111,

Exhibit 18; GSA/NCR Human Resources Division, Disciplinary Desk Guide, p. 4, Exhibit 19;

Blocker Declaration, dated August 24, 2006, ¶6, Exhibit 12. A letter of warning remains in an

employee's personnel folder for a period of one year and then is removed. Anderson

Declaration, dated August 18, 2006, ¶6, p. 2, Exhibit 14; GSA Order OAD P 5410.1, p. 114,

paragraph 111, Exhibit 18; GSA/NCR Human Resources Division, Disciplinary Desk Guide, p.

4, Exhibit 19.

The Plaintiff had a recent disciplinary action, a 14-day suspension for violation of

regulations where the safety of persons or property is endangered. See Proposal Letter, dated

June 18, 2002, Exhibit 23; Decision Letter, dated July 25, 2002, Exhibit 24; SF-50s, Exhibit 25.

The applicable GSA regulations permit an enhanced penalty for a second offense. GSA Order

PAD P5410.1, pp. 118-119, paragraph 120, b-e, Exhibit 18; Table of Penalties, Exhibit 19;

Blocker Declaration, dated August 24, 2006, ¶6, Exhibit 12.

After issuance of the letter of warning, the Plaintiff was returned to her usual duties.

Plaintiff's Deposition, pp. 34:24 to 35:10, Exhibit 8; Blocker Declaration, dated August 24,

2006, ¶8, Exhibit 12. The temporary reassignment lasted 4 to 5 months. Id.

**ARGUMENT**

**A.    STANDARDS FOR DISMISSAL PURSUANT TO FED.R.CIV.P.12(b)(1)
AND 12(b)(6)**

A court may resolve a motion to dismiss for lack of subject matter jurisdiction under

Rule 12(b)(1) in two ways. First, the court may determine the motion based solely on the

complaint. Herbert v. National Academy of Science, 974 F.2d 192, 197 (D.C. Cir. 1992).

Alternatively, to determine the existence of jurisdiction, a court may look beyond the allegations

of the complaint, consider affidavits and other extrinsic information, and ultimately weigh the

conflicting evidence. Id.

A motion pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted tests the legal sufficiency of the complaint. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). And, while the complaint need only set forth a short and plain statement of the claim sufficient to give the Defendant fair notice of its contours and the grounds upon which it rests (Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003)), dismissal is appropriate in any case in which the Defendant demonstrates that the Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. Id.; Warren v. District of Columbia, 353 F.3d 36, 37 (D.C. Cir. 2004). Moreover, in testing the complaint, the court is not required to accept as true "inferences unsupported by the facts set out in the complaint or legal conclusions cast as factual allegations." Kingman, 348 F.3d at 1040.

### B.    LEGAL STANDARD FOR MOTION FOR SUMMARY JUDGMENT.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In determining whether there exists a genuine issue of material fact, the Court must view all facts, and reasonable inferences to be drawn from them, in a light most favorable to the non-moving party. Anderson, 477 U.S. at 255. If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50. Indeed, in order to withstand summary judgment, the non-moving party may not rest upon mere allegations or denials. Id. at 248. The mere existence of some factual dispute is insufficient to withstand summary judgment; there must be a genuine issue of material fact. Id.

6

at 247-48. There is no genuine issue of material fact if the relevant evidence of record, taken as a whole, indicates that a reasonable fact finder could not return a verdict for the party opposing summary judgment. Id. at 248. That is, if the submitted evidence is of such a character that it would not permit a reasonable fact finder to find in favor of the non-moving party, summary judgment is appropriate. Id. at 251.

Rule 56 does not require the moving party to negate the non-movant's claim or to show the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Rather, when the movant files a properly-supported summary judgment motion, the burden shifts to the nonmoving party to show "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-movant cannot manufacture genuine issues of material fact with "some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., 475 U.S. at 586, or with "conclusory allegations," "unsubstantiated assertions," "or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). See also Brown v. Small, 2006 WL 1888562 at *4 (D.D.C. July 7, 2006) (RBW) (same).

**1.    Legal Standards Applicable to Claims of Employment Discrimination.**

The ultimate issue in an employment discrimination case is whether the Plaintiff has met his or her burden of demonstrating that the adverse employment action, if discrimination, or materially adverse consequences, if retaliation, complained of was motivated, at least in part, by intentional discrimination or retaliation. Where, as here, a Plaintiff offers no direct evidence of discrimination, plaintiff may create a triable issue of discrimination or retaliation by relying on the familiar framework first enunciated by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805 (1973). See also Cones v. Shalala, 199 F.3d 512, 516 (D.C. Cir. 2000).

It should be remembered, however, that at all times the burden of proof remains with the Plaintiff even when the Plaintiff's case is built on inferential evidence under the McDonnell Douglas analysis. In the summary judgment context, the central inquiry remains the evidence, or lack thereof, of discrimination or retaliation in a particular case. The Court should weigh whether the Plaintiff has proof that would permit a reasonable jury to conclude that discrimination was a motivating factor for the challenged action, looking to Defendant's legitimate, non-discriminatory or non-retaliatory reasons for the challenged decision and the evidence as a whole, in order to determine whether there is a need for trial. See, e.g., Holcomb, 2006 WL 45853 at *5 (quoting Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003)). See also Brown v. Small, 2006 WL 1888562 at *5 (D.D.C. July 7, 2006) (RBW) (Plaintiff must show that a reasonable jury could conclude from all of the evidence that the adverse employment action was made for a discriminatory reason).

Under the McDonnell Douglas test, Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the Plaintiff is able to establish a prima facie case, then the Court should weigh Defendant's legitimate, nondiscriminatory reason or reasons with any evidence Plaintiff presents that Defendant's stated reason merely was a pretext for discrimination. Id. At all times, Plaintiff retains the ultimate burden of persuasion to demonstrate that she was in fact the victim of intentional discrimination or retaliation. Burdine, 450 U.S. at 252-53.

Before turning to the merits, a brief word is in order concerning the scope of review in employment discrimination cases. Though Plaintiff might wish it otherwise, the employment discrimination statutes did not transform federal courts into review boards for local employment

decisions. "Title VII, it bears repeating, does not authorize a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)). To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)). See also Barnette v. Chertoff, – F.3d – , No. 04-5443, slip. op. at 2 (D.C. Cir. July 7, 2006).

## C.    THE PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE CASE OF RETALIATION

The Defendant concedes that the Plaintiff engaged in prior EEO activity and that the responsible management official, Ronald Blocker, was aware of this activity. The Plaintiff, however, cannot establish the requisite adverse action.

In order to establish a prima facie case of retaliation, the Plaintiff must demonstrate 1.) that she engaged in statutorily protected activity; 2.) that the employer took a materially adverse action such that the action could well dissuade a reasonable employee from making or supporting a charge of discrimination; and 3.) that there was a causal connection between the two. *See, e.g.* Burlington Northern & Sante Fe Railway Co v. White, 126 S Ct 2405, 2410-11 (2006); Broderick v. Donaldson, 437 F 3d 1226, 1231-32 (D.C. Cir 2006); Lee v. Winter, 2006 WL 1981600 (D.D.C. 2006).

In elaborating on this standard, the Supreme Court in Burlington Northern v. Santa Fe Railway Co, 126 S Ct at 2049 explained, "We conclude that the (anti-retaliation) provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant. In the present context that means that the employer's

9

actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." The Court explained that it refers to "material adversity" to separate significant from trivial harms. Id. at 2415.

### 1.    The Temporary Reassignment

Plaintiff's temporary assignment pending the investigation of alleged improper conduct also does not qualify as an adverse action. The D.C. Circuit has long held that temporary reassignments do not rise to the level of an actionable injury. *See, e.g.*, Stewart v. Evans, 275 F 3d 1126, 1135 (D.C. Cir 2002)(the denial of a temporary acting position cannot constitute an adverse employment action; Freedman v. MCI Telecommunications Corp, 224 F 3d 840, 847-48 (D.C. Cir 2001)(A temporary assignment to a less desirable task does not create liability under Title VII); Smith v. Dist of Columbia, 271 F Supp 2d 165, 172 (D.D.C 2003)(temporary reassignment without a change in pay and benefits is not an adverse employment action). *See also* Brown v. Brody, 199 F 3d 446 (D.C. Cir 1999)(same); Cheek v. Chertoff, 2006 WL 695829 (Slip Copy D.D.C. 2006)(same); Ware v. Billington, 344 F. Supp 2d 63, 74 (D.D.C. 2004)(same); Bowie v. Ashcroft, 283 F Supp 2d 25 (D. D.C. 2003) and the cases cited therein. In Forkkio v. Powell, 306 F.3d 1127, 1131 (D.C. Cir. 2002), the court clearly viewed the loss of temporarily assigned duties as less weighty than permanent duties. See Id. The Forkkio court also noted that "[p]urely subjective injuries, such as dissatisfaction with a reassignment, Brown, 199 F.3d at 457, or public humiliation or loss of reputation, see Stewart, 275 F.2d at 1136 are not adverse actions." 306 F.3d at 1130-31.

The Court in Burlington Northern & Santa Fe Railway Co, 126 S CT at 2417 noted that reassignment of job duties is not automatically actionable. But, rather, whether a particular reassignment is materially adverse "depends upon the circumstances of the particular case, and

should be judged from the perspective of a reasonable person in the Plaintiff's position, considering all the circumstances." Id. While the Court found that the reassignment at issue in Burlington constituted an adverse action, the temporary assignment at issue in this case is clearly distinguishable. Burlington involved a permanent reassignment to different duties within the same position description (i.e. from forklift operator to track labor). The Court found that the reassignment constituted an adverse action because the track labor duties were more arduous and dirtier, the forklift operator position required more qualifications, which is an indication of prestige, and the forklift operator position was objectively considered a better job and the male employees resented the Plaintiff for occupying it. In a decision subsequent to Burlington, the D.C. District Court also found a reassignment of duties to constitute an adverse action because it was permanent and involved a substantial reduction in important duties and a corresponding threat of reduction in compensation. Lee v. Winter, 2006 WL 1981600 (D.D.C. 2006).

This case is clearly distinguishable from Burlington and Winter. First of all, the Plaintiff was assigned other duties only temporarily pending an investigation into misconduct. Plaintiff's Deposition, pp. 34:24 to 35:10, Exhibit 8; Blocker Declaration, dated, ¶8, Exhibit 12. It lasted only 4 to 5 months. Id. Once the investigation was completed and appropriate disciplinary action meted, she was returned to her office space and prior work assignments. Id. Plaintiff was never officially reassigned in January of 2003, but, rather, remained in the same position of GS-1811-12 Criminal Investigator in the same division, earning full LEAP pay. Blocker Affidavit, dated April 25, 2003, pp. 1-3, Exhibit 11; Blocker Declaration, dated August 24, 2006, ¶3, pp. 1-2, Exhibit 12; Plaintiff's Deposition, pp. 60:4 to 23; 68:24 to 69:6, Exhibit 8.

Although the Plaintiff alleges that she lost substantial amounts of overtime due to the temporary reassignment, she failed to provide any credible evidence of this alleged loss during

discovery. See Plaintiff's Deposition, p. 52:1-9, Exhibit 8. She could produce no written requests for overtime. Id. Plaintiff failed to provide any details concerning when and for what occasions she requested overtime, when and for what occasions she was denied overtime, and what amount of overtime she was allegedly denied. Id. Contrary to her contentions, the Plaintiff's tax returns indicate that she received more income in 2003 than in 2002 (compare 2003 Tax Return, indicating wages of $78,899 compared with her 2004 Tax Return, indicating wages of $84,426 Attachment 3 to Plaintiff's Deposition, Exhibit 8)(filed under seal).

In fact, the Plaintiff admitted that there is not a lot of overtime work in her office.    See Plaintiff's Deposition, p. 52:1-9, Exhibit 8. She explained that it is "mostly on the weekends when there's a big demonstration or something coming." Id. During the time period of her temporary reassignment, the Plaintiff received LEAP pay equivalent to 25% of her basic pay to compensate her for unscheduled overtime or work outside of the 40-hour workweek. Blocker Declaration, August 24, 2006, ¶3, pp. 1-2, Exhibit 12; Plaintiff's Deposition, pp. 60:4 to 23; 69:2 to 6, Exhibit 8. Under the Agency's applicable LEAP pay policy FPS agents or criminal investigators normally will not be assigned regularly scheduled overtime because of their receipt of LEAP pay. FPS Policy for Implementation of Law Enforcement Availability Pay, dated October 6, 1997, General Rules, paragraph 5, Exhibit 26.

The Plaintiff also claimed that she was not permitted to use a government-owned vehicle (GOV), which allegedly caused her financial loss. (Amended Complaint, ¶ 15). However, the Plaintiff did not require a GOV during the temporary reassignment because she was not conducting investigations. Blocker Affidavit, dated April 25, 2003, p. 3, Exhibit 11. If she needed one for other reasons, it was available to her. Id. According to her team leader, John Baker, she hardly ever used a GOV prior to the temporary reassignment. Baker Affidavit, dated

1, Exhibit 20.

The Plaintiff further claims that the office to which she was temporarily re-located was cold and it took two months for a phone to be connected which rang in her office. However, this is certainly the type of trivial, insignificant harm that Title VII was not designed to protect. *See, e.g.,* Ware v. Billington, 344 F Supp 2d 63 (D.D.C. 2004). Defendant submits that Plaintiff has not established a prima facie case of retaliation with regard to her temporary reassignment.

### 2.    The Letter of Warning

The warning notice issued to the Plaintiff also does not qualify as an adverse employment action. A warning notice merely records an instance of unsatisfactory conduct and warns of the consequences of future misconduct. Anderson Declaration, dated August 18, 2006, ¶6, p. 2, Exhibit 14; GSA Order OAD P 5410.1, p. 114, paragraph 111, Exhibit 18; GSA/NCR Human Resources Division, Disciplinary Desk Guide, p. 4, Exhibit 19; Blocker Declaration, August 24, 2006, ¶6, Exhibit 12. It is the lowest form of disciplinary action. Id. It is designed to call an employee's attention to an infraction (ordinarily a first offense not too serious in nature and warn the employee of the consequences of a repetition of misconduct. Id. A warning notice remains in the employee's Official Personnel Folder for a period of one year. Id. After one year it is withdrawn from the Official Personnel Folder and is no longer a matter of record and cannot be considered in any future disciplinary action. Id.

Prior to the Supreme Court's recent decision in Burlington Northern v. Santa Fe Railway Co, 126 S Ct at 2045, it was well-established that letters of warning or similar disciplinary actions did not rise to the level of an adverse action. *See, e.g.,* Lujan v. Johanns, 2006 WL 1431442 (Slip Copy, 10th Cir 2006)(letter of warning not an adverse action when there was no evidence that it affected the likelihood Plaintiff would be terminated, that his position was

undermined, or that his future employment opportunities were affected); Medina v. Income

Support Division, 413 F 3d 1131 (10th Cir 2005)(warning letter not an adverse action because it

was not placed in the employee's personnel file and no subsequent employer discovered or could

discover it in the future); Brown v. Brody, 199 F 3d 446 (D.C. Cir 1999)(letter of admonishment

not a materially adverse employment action); Grube v. Lau Industries, 257 F 3d 723 (7th Cir

2001)(unfair reprimands or negative performance evaluations, unaccompanied by some tangible

job consequence, do not constitute adverse employment actions); Ackel v. National

Communications, 339 F 3d 376, 385 (5th Cir 2003)(disciplinary actions in the form of

reprimands do not constitute adverse employment actions for purposes of establishing a claim of

retaliation); Walker v. Washington Metropolitan Area Transit Authority, 102 F Supp 2d 24

(D.D.C. 2000)(Notice of Caution and Reinstruction, which was rescinded shortly after issuance,

not an adverse action); Lucas v. Cheney, 821 F Supp 374 (D. Maryland 1992)(written reprimand,

which did not become part of government employee's final employment record, was not an

adverse employment action).

Although the Court in Burlington, 126 S Ct. 2405, adopted a different definition of an

adverse action under Title VII's retaliation provision than that discussed in the above-cited

cases, the Plaintiff still cannot meet the newly-articulated standard with respect to the letter of

warning. Such an action, which is designed to notify an employee of the impropriety of their

behavior, which does not become part of the employee's permanent employment record, and

which does not involve any loss of pay or employment benefits or opportunities would not be

considered materially adverse by a reasonable person. A letter of warning is clearly not

comparable to the actions discussed by the Supreme Court in Burlington – i.e. a permanent

reassignment to dirtier, less prestigious, and less desirable duties; forcing an employee to live for

37 days without income and with no known end in sight; or failure to protect against death threats by a criminal. Id. at 2408-2418.

### D.    THE DEFENDANT HAS ARTICULATED LEGITIMATE, NON-DISCRIMINATORY REASONS FOR ITS ACTIONS.

#### 1.    The Temporary reassignment was Warranted and the Issuance of a Warning Notice Was Proper

It is undisputed that the Plaintiff accessed confidential personnel information through her government computer, including disability identifiers, disciplinary actions, and promotion actions. Plaintiff's Deposition, pp. 66:22 to 67:25, Exhibit 8; Blocker Affidavit, dated April 25, 2003, pp. 1-2, Exhibit 11; OIG Report, Exhibit 13. The Plaintiff informed her co-workers that the information was located on the computer and was unprotected. Plaintiff's Deposition, p. 37:12 to 17, Exhibit 8; OIG Report, Exhibit 13; Blocker Affidavit, dated April 25, 2003, pp. 1-2, Exhibit 11; OIG Report, Exhibit 13. Id. She copied this information onto her own user drive. OIG Report, Exhibit 13; Anderson Declaration, dated August 18, 2006, ¶7, Exhibit 14; Blocker Declaration, dated August 24, 2006, ¶7, Exhibit 12. The Plaintiff urged her co-workers not to tell management or they would lose access to the information. Blocker Affidavit, dated April 24, 2003, pp. 1-2, Exhibit 11; OIG Report, Exhibit 13. Several employees indicated concern both to Plaintiff and to Ronald Blocker. Plaintiff's Deposition, p. 68:6 to 9; Blocker Affidavit, dated April 25, 2003, pp. 1-2, Exhibit 11; Blocker Declaration, dated August 24, 2006, ¶3, p. 1, Exhibit 12; OIG Report, Exhibit 13.

The Plaintiff had no business-related reason to access or disclose this information. Blocker Declaration, dated August 24, 2006, ¶3, p. 1, Exhibit 12; Anderson Declaration, dated August 18, 2006, ¶7, p. 3, Exhibit 14. Her actions in accessing and disclosing violated the Privacy Act, 5 USC 552a (i)(1), which provides for criminal sanctions for a willful disclosure of

privacy act information, as well as internal Agency orders. Declaration of Anderson, dated August 18, 2006, ¶7 through 9, p. 3 and Attachment 3 thereto, Exhibit 14. The Plaintiff also violated internal Agency regulations by failing to report the unsecured information. Id.

The GSA Privacy Act Program Overview explains that the purpose of the Act is designed to protect an individual's privacy from unwarranted invasion, to make sure that personal information in possession of Federal agencies is properly used, and to prevent any potential abuses made possible by the use of advancing technology to store and retrieve personal information. Exhibit 27; See also Declaration of Anderson, dated August 18, 2006, ¶7 through 9, p. 3 and Attachment 3 thereto, Exhibit 14. It further states that all personal information must be used only for the purpose for which it's collected and only by the individuals who are authorized to access it. Id. It permits other employees to access specific items of information if they have a need to know it in the performance of their official duties. Id. Law enforcement officials are permitted to obtain personal information upon written request or court order. Id.

The GSA Privacy Act Policy and Procedure prohibits the disclosure of information contained in a Privacy Act system of records to anyone other than the individual of record without the written consent of that individual, except in very limited circumstances. Exhibit 28; See also Declaration of Anderson, dated August 18, 2006, ¶7 through 9, p. 3 and Attachment 3 thereto, Exhibit 14. It imposes a duty on GSA employees to protect the security of personal information by avoiding any unauthorized disclosure, verbal or written, of records. Id.

GSA Instructional Letter, CIO IL-02-02, entitled, "GSA Information Technology General Rules of Behavior", dated July 2, 2002, states that all GSA information resources are the property of GSA and GSA's information resources are provided for GSA business purposes only. Exhibit 29, ¶9; Declaration of Anderson, dated August 18, 2006, ¶7 through 9, p. 3 and

Attachment 3 thereto, Exhibit 14. It requires users of GSA information system resources to use them in an ethical and lawful manner and in accordance with the instructional letter. Id. It prohibits users from attempting unauthorized access of information contained in any system or application. Id. It also requires users to report security incidents to their local helpdesk or ISSO and to protect government property from theft, destruction, or misuse. Id.

GSA Order CIO P 2100.1A, dated January 13, 2003, Subject: GSA Information Technology (IT) Security Policy, dated January 13, 2003. Exhibit 30, Chapter 2, Paragraph 13, requires all authorized users of GSA IT resources to comply with GSA's IT Security Policy and to report any observed or suspected security problems to their local help desk or ISSO. GSA Order ADM 7800.11, Personal Use of Agency Office Equipment, dated September 11, 1997, paragraph 3d (Exhibit 31) states in part that employee shall exercise common sense and good judgment in the personal use of agency office equipment. Declaration of Anderson, dated August 18, 2006, ¶7 through 9, p. 3 and Attachment 3 thereto, Exhibit 14.

In 2001 and 2002, the Plaintiff attended a Continuing Legal Education Training Program, which covered the proper search and seizure of computers; an IT security awareness course, and ethics training. Declaration of Anderson, dated August 18, 2006, ¶7 through 9, p. 3 and Attachment 3 thereto, Exhibit 14. Thus, the Plaintiff's actions violated both federal and internal Agency orders. In addition, the Plaintiff attended various training courses in which the ethical issues with regard to the access and disclosure of private information were discussed.

The Plaintiff failed to accept responsibility for her actions and acknowledge any wrongdoing, instead offering various excuses. See Plaintiff's Responses to the GSA Form 225 and the Letter of Warning, Exhibits 16 and 17. She claimed that those who failed to protect the information were at fault and because the information was unprotected, she thought her access

and disclosure was acceptable. Id. The fact remains, however, that the Plaintiff told her co-workers not to report her actions to management indicating that she knew her actions were wrongful. Blocker Affidavit, dated April 25, 2003, pp. 1-2, Exhibit 11. Even though the information was unprotected, the Plaintiff behaved unethically and inappropriately in reviewing it, sharing it with co-workers, and copying it to her own user drive.

Here, the Plaintiff was temporarily reassigned to non-investigative duties pending the OIG investigation into her misconduct. It was standard practice at FPS to transfer law enforcement officers to administrative duties while an investigation into misconduct was pending. Anderson Declaration, dated August 18, 2006, ¶5, Exhibit 14. The Plaintiff had become a disruptive force because she shared this information with co-workers and caused at least one of them to become upset at her non-selection for a position. Blocker Affidavit, dated April 25, 2003, Exhibit 11; Anderson Declaration, dated August 18, 2006,¶¶7 and 8, p. 3, Exhibit 14.

Mr. Blocker treated the Plaintiff in a lenient manner by issuing only a letter of warning, especially considering that she had a recent disciplinary action for violation of regulations and that she was a criminal investigator at the GS-12 level. See Blocker Declaration, dated August 24, 2006, ¶6, Exhibit 12. The GSA Order OAD P 5410.1, pp. 118-119, paragraph 120, b-e, Exhibit 18 and Table of Penalties, Exhibit 19, permit aggravation when there has been prior misconduct and if the person occupies a sensitive position. The applicable Table of Penalties (Exhibit 19, Item 28) authorized a reprimand to removal for a first offense of unethical or improper use of official authority or unauthorized disclosure or use of official information. Here, Mr. Blocker deemed a mere warning notice to be the appropriate action. Thus, the Defendant has articulated non-discriminatory reasons for the temporary assignment of the Plaintiff for improper

conduct and the issuance of a letter of warning.

**E.    THE PLAINTIFF CANNOT SHOW PRETEXT.**

Plaintiff alleges that other employees accessed the same information but were not disciplined. Mr. Blocker was aware of only two other employees who accessed the information. Blocker Declaration, dated August 24, 2006, ¶9, Exhibit 12. These employees, however, were not similarly situated to the Plaintiff. First of all, the Plaintiff, not these other employees, instigated the improper conduct. Plaintiff's Deposition, pp. 33:1-10; 66:22 to 67:25; 68:6 to 9, Exhibit 8; OIG Report, dated April 9, 2003, Exhibit 13; Affidavit of Ronald Blocker, dated April 25, 2003, p. 1, Exhibit 11;.Blocker Declaration, dated August 24, 2006, ¶9, Exhibit 12. Second, the Plaintiff failed to report the unsecured information to management and encouraged others not to report it. Id. On the other hand, both of these employees reported to Blocker that the information was accessible on the computer and not protected. Blocker Declaration, dated August 24, 2006, ¶9, Exhibit 12. Indeed, one of these employees engaged in prior EEO activity, which dispels any inference of discrimination based on reprisal. Id. Thus, the Plaintiff cannot make any showing of pretext with regard to her temporary reassignment and letter of warning.

## CONCLUSION

Based on all the foregoing, this action should be dismissed or summary judgment entered in Defendant's favor.

Respectfully submitted,

_/s/_ _____
KENNETH L. WAINSTEIN, D.C. Bar # 451058
Assistant United States Attorney

_/s/_ _____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

_/s/_ _____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
Judiciary Center Bldg.
555 4th Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-7224

OF COUNSEL:
Katherine Johnson
Associate Legal Advisor
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security