**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------

| | |
|---|---|
| CHERYL DAVIS | ) |
| 4507 Dallas Place, | ) |
| Temple Hills, #202, | ) |
| MD 20748 | ) |
|        Plaintiff, | ) |
| | ) |
|        v. | )   Civil Action No. 05-1423 (HHK) |
| | ) |
| MICHAEL CHERTOFF, SECRETARY | ) |
| U.S. DEPT. OF HOMELAND SECURITY | )   October 6, 2006 |
| Washington, DC 20528-5072 | ) |
| | ) |
|        Defendant | ) |

---------------------------------------------------

### THE PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendant filed its motion for summary judgment on September 1, 2006 claiming that there are no material factual issues in dispute and that defendant is entitled to summary judgment as a matter of law. However, plaintiff submits that there are factual issues that are genuinely in dispute which require resolution by a jury and that summary judgment must be denied.

The principal factual issue that is genuinely in dispute is whether the Defendant engaged in retaliation based on plaintiff's prior EEO activity by treating plaintiff (hereinafter Ms. Davis) more severely than her coworkers who viewed the same personnel information on their government issued computers but were not reassigned to administrative duties for five months, refused overtime or issued a letter of warning. While it is undisputed that plaintiff viewed personnel information on her like at least two other co-workers, it is disputed whether she was authorized to have access to this folder. It is disputed whether Ms. Davis violated any of

defendant's policies and procedures when she viewed this information on her computer and whether it is standard practice for the defendant to reassign employees pending investigations of misconduct. It is disputed whether Ms. Davis lost significant overtime pay that she regularly earned in conducting her investigative duties. There is also a dispute on whether the investigation of the Office of Inspector General exonerated Ms. Davis so as to make the defendant's one month delay in assigning Ms. Davis back to investigative duties further retaliation.

For the purposes of summary judgment, the Court must resolve these disputes in Ms. Davis's favor. Once doing so, Ms. Davis will prove in this memorandum of law that the defendant, Department of Homeland Security (hereinafter the defendant), retaliated against her based on her prior EEO activity by reassigning her from her investigative duties as a Special Agent to administrative duties and issuing her a letter of warning in violation of Section 704 of Title VII of the Civil Rights Act of 1964, 42 U.S.C. SEC. 2000e-3.

Ms. Davis has set forward a strong prima facie case of retaliation. Ms. Davis filed a formal charge of discrimination against the defendant and the defendant knew about this charge. Within four months of filing the charge, Ms. Davis was accused of accessing confidential personnel information on her computer, subjected to an investigation by the Office of Inspector General (OIG) for misconduct, reassigned to administrative duties in a different building away from her co-workers, refused overtime and night time differential pay for five months and issued a letter of warning. The reassignment gives rise to an inference of retaliation as Ms. Davis was not authorized to return to her investigative duties or work any overtime during a five month period despite the fact the defendant's own computer specialist immediately advised defendant that Ms. Davis was authorized to access the information and the OIG reached the same conclusion within four months.

Defendant's legitimate non-discriminatory reason of following its standard procedure by reassigning Ms. Davis pending investigation is pretext for discrimination. Defendant concedes that at least two other employees accessed the same information as Ms. Davis around the same time and were not investigated, reassigned or issued any discipline. In addition, defendant has provided inconsistent reasons for initiating the investigation as well as for refusing to let Ms. Davis resume her investigative duties which challenges its credibility.

Looking at the above evidence a reasonable jury could conclude that Ms. Davis was subjected to an OIG investigation, reassigned to administrative duties, refused overtime and night time differential pay and prohibited from using her government issued computer and car and secluded from her co-workers in retaliation for filing an EEO charge against the defendant. Under these circumstances, the Court must deny the defendant's motion to dismiss and its motion for summary judgment.

I. PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS:

Ms. Cheryl E. Davis is an African American female. She has been employed as a GS-1811 Criminal Investigator (CI) with the Federal Protective Services (FPS), National Capitol Region, Immigration and Customs Enforcement (ICE), Department of Homeland Security (DHS) since March of 1991. Def. Exh. 8, pg 7:16 through 8:9, Pl. Depo. She was promoted to the GS-12 level in 2001. Def. Exh. 8, pg 8:9, Pl. Depo.

Between 2001 and 2003 Ms. Davis' first level supervisor was Mr. John Baker, Supervisory Special Agent and her second level supervisor was Mr. Ronald Blocker, Chief of Threat Management Branch. Def. Exh. 4, pg 4, EEO Counselor's Report dated February 25,

2003. She also worked under Mary Burnette, Supervisory Special Agent and Team Leader for Intelligence section. Id.

Ms. Davis had her service issued weapon stolen from the glove compartment of her car on April 11, 2001. Def. Exh. 7, pg. 2, Final Agency Decision dated April 25, 2005. Ms. Davis immediately notified defendant of this incident. Id. Fourteen months after the incident defendant proposed Ms. Davis' for a 30 day suspension. Id. Fifteen months after the incident, defendant notified Ms. Davis that she would be suspended for 14 days. Id.

On September 6, 2002, Ms. Davis filed a Formal Complaint of Discrimination against the defendant for discrimination based on race, age, gender and reprisal. Def. Exh 1, pg 1-6 EEO Counselor's Report dated September 12, 2002.

Four months after Ms. Davis filed the complaint, around January 16, 2003, Mr. Ronald Blocker, Special Agent in Charge, and Ms. Mary Burnette, Supervisory Special Agent, questioned Special Agent Ira Johnson about giving Ms. Davis a ride from her home in Maryland in his government issued vehicle. Def. Exh. 21, pg 1-2, Affidavit of Ira Johnson dated May 8, 2003.

On January 21, 2003, Mr. Ronald Blocker accused Ms. Davis of "improperly accessing private and confidential personnel information relating to others." Def. Exh. 11. pg 1, Addendum Affidavit of Ronald Blocker dated April 25, 2003. Mr. Blocker told Ms. Davis that "until the situation could be investigated and resolved, her access to the computer had been revoked, she was being moved to Building 202, and she would not be given new investigative assignments." Id. at 1-2. Mr. Blocker also took away Ms. Davis' government vehicle and denied her scheduled overtime. Id. at pg 1.

The defendant concedes that Special Agents Mr. Malcolm Weeks and Allsion Poore

accessed the same information but they were not investigated, reassigned or disciplined. Def Exh. 12, pg. 3, ¶ 9, Decl. of Blocker dated August 24, 2006.

Around January 21, 2003, Mr. Blocker asked Computer Coordinator, Ms. Deborah Norton, to revoke Ms. Davis' access to the computer. Pl. Exh 1, Memorandum of Office of Inspector General (OIG), Interview of Ronald Blocker dated February 4, 2003. Ms. Norton disabled Ms. Davis' domain account pursuant to Mr. Blocker's request. Pl. Exh 1, Interview of Deborah Norton dated March 25, 2003 and E-mails dated March 26, 2003.

During this preliminary investigation around January 21, 2003, Ms. Norton advised Mr. Blocker that the information Ms. Davis accessed was not in a "restricted drive" and "everyone in Blocker's office has access to it." Pl. Exh 1, Interview of Norton and OIG Memorandum for Joseph Trindal, Director of FPS dated April 9, 2003. Ms. Norton advised the defendant that Ms. Davis was authorized by the defendant to access the drive from her computer. Pl. Exh 1, OIG Memorandum for Joseph Trindal and E-mails from Norton. Id. She also explained to Mr. Blocker that the "personnel folder was not password protected" so if Ms. Davis accessed the information in the "personnel" folder of the "K" drive, then she did not take any "unauthorized steps". Pl. Exh. 1, OIG Memo. for Joseph Trindal.

On January 31, 2003, when Ms. Davis was 20 minutes late for work, Mr. John Baker, Ms. Davis' immediate supervisor, asked her to turn in a leave slip for being late. Def. Exh. 20, pg 3, Addendum to Affidavit of John Baker dated April 29, 2003. Mr. Baker conceded that other employees are "consistently" late for less than half an hour including Mary Burnette, Supervisory Special Agent. Id. Mr. Blocker, Chief of Threat Management and Mr. Baker's immediate supervisor, concedes that he has "never had an employee to submit a leave slip for less than thirty minutes." Def. Exh. 11, pg. 5, Addendum to Affidavit of Blocker.

On April 9, 2003, Gregory G. Rowe, of the Office of Inspector General provided Mr. Joseph Trindal, Director of FPS, his Report of Investigation for Ms. Davis' case. Pl. Exh. 1, OIG Memo. for Joseph Trindal. According to the investigation, Ms. Davis was "an authorized user of the 'K' drive and therefore did not gain unauthorized access to the drive." Id. at pg 2. Mr. Rowe also found that the "personnel folder was not password protected" and that "there were no restrictions" to prevent Ms. Davis from accessing it. Id. Mr. Rowe's investigation concluded that Ms. Davis took no unauthorized or "extraordinary measures to access the personnel folder."

The Office of Inspector General referred their investigation back to the Agency "for any further administrative and/ or other actions you deem necessary." OIG Memo. for Joseph Trindal.

Mr. Blocker obtained a witness statement from Special Agent Malcolm Weeks on April 25, 2003. Def. Exh. 12, pg. 3, ¶ 5, Decl. of Blocker dated August 24, 2006. Mr. Blocker issued Ms. Davis a Notice of Infraction on April 28, 2003. Id. Finally on May 7, 2003, Mr. Blocker issued Ms. Davis a Warning Notice for viewing personnel information on her computer and authorized her to return to her investigative duties. Id.

## II.    **ARGUMENT**

### A. **Summary Judgment and Rule 12(b)(1) and (6) Standards:**

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment may not be granted unless the record is clear that the moving party has demonstrated that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law.   Tao v. Freh, 27 F.3d 635, 638 (D.C. Cir. 1994); Fed R. Civ. P. 56(c). In

examining the record, the reviewing court must view all inferences in a light most favorable to the non-moving party, <u>Adickes v. S.H. Kress & Co</u>., 398 U.S. 144, 157 (1970), and "assume the truth of the non-movant's evidence." <u>Bayer v. U.S. Dept. of Treasury</u>, 956 F.2d 330, 333 (D.C. Cir. 1992); <u>Langdon v. Dept. of Health and Human Services</u>, 959 F.3d 1053, 1058 (D.C. Cir. 1992).

The Supreme Court has specified the standards for reviewing employer's motions for summary judgment in employment discrimination cases by holding. It has held that "the court should review all of the evidence in the record. <u>Reeves v. Sanderson Plumbing</u>, 530 U.S. 133, 140 (2000).

In doing so, however, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." <u>Id</u>. at 143 (internal quotation marks omitted). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." <u>Id</u>. (emphasis supplied). "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that the evidence comes from disinterested witnesses." <u>Id</u>. (internal quotation marks omitted). The Court may not grant the motion unless there is "abundant and uncontroverted independent evidence that no discrimination occurred." <u>Id</u>. at 148.

The standards for granting a Rule 12(b)(1) and (6) motions for failure to state a claim is are even more onerous on the moving party. In deciding a motion to dismiss under Rule 12(b)(1) and (6), the court is bound to consider all well-pleaded facts as true, and to draw all reasonable inferences in favor of the non-movant. <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974). Therefore

"a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Even if the plaintiff fails to plead specifically that she has a prima facie case in her complaint she still may prevail. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002). In responding to a motion to dismiss, she only needs to set forth facts which, if believed, would establish her case. Id. and EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C.Cir.1997).

B.  Standards For Proving Discrimination and Retaliation

To survive a motion to dismiss and/or summary judgment in a discrimination and/or retaliation case, an employee must first set forth a prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  An employee makes out a prima facie case of retaliation "by establishing that: '(1) she filed a charge of, or otherwise opposed, discrimination that was known to her employer; (2) she suffered a materially adverse employment action that could dissuade a reasonable employee from making or supporting a charge of discrimination and (3) the unfavorable action gives rise to an inference of retaliation. Burlington Northern & Santa Fe Railway Co. v. White, 126 S.Ct. 2405, 2410-1 (2006); Rochon v. Gonzales, 438 F.3d 1211, 1217-1218 (C.A.D.C.2006).  In a retaliation case, an inference of discrimination may be made by the temporal proximity between filing the discrimination complaint, or otherwise opposing discrimination, and the adverse action.  Cones v. Shalala, 199 F.3d 512, 521 (D.C. Cir. 2000); Mitchell v Baldridge, 759 F.2d 80, 986 (D.C.Cir.1985).

Once the employee proves a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its decision. United States Postal Serv. Bd.

of Governors v. Aikens, 460 U.S. 711, 715 (1983); Teneyck v. Omni Shoreham Hotel, 365 F.3d 1139, 1151 (D.C.Cir.2004). If the employer does so, at the next stage of the case, the various burden-shifting mechanisms should be applied to allow victims of discrimination to establish their cases through inferences based upon circumstantial and other kinds of proof. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 99-100 (2003). In the single motive framework, after the employer meets its burden to articulate a non-discriminatory reason for its decision on summary judgment, the burden shifts to the employee to show that a reasonable fact finder could nonetheless infer discrimination. United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. at 715; quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978); Teneyck v. Omni Shoreham Hotel, 365 F.3d at 1151.

Under this framework, Ms. Davis bears the burden to prove that the agency's reasons for its actions were pretexts, that is not worthy of belief and/or that retaliation more likely than not motivated the agency. Id., George v. Leavitt, 407 F.3d 405, 514 (D.C. Cir. 2005). In doing so, she may present evidence from which a reasonable fact finder could find retaliation "either directly by persuading the [fact finder] that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." George v. Leavitt, 407 F.3d at 414, quoting and Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981) and United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. at 716.

To prove that a fact finder could reasonably infer retaliation despite the agency's proffer of a non-discriminatory reason, the Judge must consider the totality of Ms. Davis's evidence. This includes:

> '(1) the plaintiff's prima facie case; (2) any evidence the plaintiff
> presents to attack the employer's proffered explanation for its

> actions; and (3) any further evidence of discrimination that may be
> available to the plaintiff (such as independent evidence of
> discriminatory statements or attitudes on the part of the employer).'
> *Waterhouse v. District of Columbia,* 298 F.3d 989, 992-93
> (D.C.Cir.2002) (quoting *Aka v. Wash. Hosp. Ctr.,* 156 F.3d 1284,
> 1289 (D.C.Cir.1998) (en banc)) (internal quotation marks omitted).

Salazar v. Washington Metropolitan Transit Authority, 401 F.3d at 508.  Ms. Davis may prevail

on summary judgment if she submits evidence on any of the above three elements from which a

reasonable fact finder may infer retaliation. If she submits evidence on all three, summary

judgment must be denied.  Aka v. Wash. Hosp. Ctr., 156 F.3d at 1289 (a prima facie case, plus

evidence from either or both of the other two categories, is normally sufficient grounds to deny

summary judgment).

### 1.   Ms. Davis Makes Out a Prima Facie Case of Retaliation under Title VII that Raises An Inference of Discrimination:

In her complaint in this case, Ms. Davis clearly alleged all four elements of her prima

facie case, even though she was only required to raise an inference of discrimination to avoid a

motion to dismiss. In fact, the defendant does not dispute that she has met the following

elements. She had filed an EEO claim on September 6, 2003. Def. Exh 1, pg 1-6 EEO

Counselor's Report. Within four months thereafter, Ronald Blocker, her supervisor, falsely

accused her of accessing confidential material and re-assigned her to administrative duties. Def.

Exh. 11. pg 1, Addendum Affidavit of Blocker.  The defendant does not dispute that Mr. Blocker

knew about the EEO claim before doing so. Def. Exh. 4, pg. 8, EEO Counselor's Report.

The defendant claims that Ms. Davis has no prima facie case because she cannot show

that the re-assignment to administrative duties was an adverse action. Def. Memo. Of Points and

Authorities in Support of Def. Motion to Dismiss or, in the Alternative, for Summary Judgment,

pg. 10. The defendant maintains that the re-assignment was temporary and did not result in a loss

of pay. Id. at 12. The defendant also claims that the denial of a government phone and use of a government vehicle, the decision to place her in an isolated office with extreme temperatures and later the decision to issue her a warning after she was exonerated by the Office of Inspector General, were all too unimportant to be materially adverse. Id. at 11-13. These claims have no merit.

Contrary to the defendant's claims, all aspects of Ms. Davis' re-assignment constituted adverse actions that could dissuade a reasonable employee from making a charge of discrimination and retaliation.

In the recent Burlington Northern decision, the Supreme Court made clear that the anti-retaliation provision of section 704 of Title VII extends beyond the anti-discrimination provisions of section 703. To determine whether retaliation has occurred, the Court must examine the context and the totality of circumstances involved in the employer's action. The focus is not on the economic harm the employee has suffered but whether a reasonable employee would be deterred from filing a charge given the treatment she has received. The Court held:

> The anti-retaliation provision seeks to prevent employer interference with "unfettered access" to Title VII's remedial mechanisms. *Robinson,* 519 U.S., at 346, 117 S.Ct. 843. It does so by prohibiting employer actions that are likely "to deter victims of discrimination from complaining to the EEOC," the courts, and their employers. *Ibid.* And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence. See 2 EEOC 1998 Manual § 8, p. 8-13. . .

> We phrase the standard in general terms because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters. "The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Oncale, supra,* at 81-82, 118 S.Ct. 998. A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school age children. Cf., *e.g., Washington, supra,* at 662 (finding flex-time schedule critical to employee with disabled child). A supervisor's refusal to invite an employee to lunch

is normally trivial, a nonactionable petty slight. But to retaliate by excluding an employee from a weekly training lunch that contributes significantly to the employee's professional *2416 advancement might well deter a reasonable employee from complaining about discrimination. See 2 EEOC 1998 Manual § 8, p. 8-14. Hence, a legal standard that speaks in general terms rather than specific prohibited acts is preferable, for an "act that would be immaterial in some situations is material in others." *Washington, supra,* at 661.

In fact, under the same standard as in <u>Burlington Northern</u>, the Court of Appeals for the District of Columbia has recently held that the FBI's failure to investigate an alleged criminal threat against an ex-employee states a claim for retaliation even though the plaintiff, as an ex-employee, could not identify any employment related harm connected to the FBI's inaction. <u>Rochon v. Gonzales</u>, 438 F.3d at 1217-1218. The facts underlying Ms. Davis' complaint clearly meet this broad standard for defining retaliation.

First and foremost, until her re-assignment, Ms. Davis' job was as a law enforcement officer for the Department of Homeland Security. Def. Exh. 8, pg 7:16 through 8:9, Pl. Depo. Her job involved investigative police work with all the responsibilities and authority inherent in that position. <u>Id</u>. During her re-assignment, the defendant removed all her responsibilities and authority.  Def. Exh. 11. pg 1, Addendum Affidavit of Blocker dated April 25, 2003. Since she could no longer conduct investigations, the defendant also denied her the right to use her government vehicle and assigned her vehicle to another officer. Def Exh. 4, pg 10, Blocker's Statement in EEO Counselor's Report. Moreover, the defendant isolated her from her co-workers and supervisors. It relegated her to organizing files without a computer or phone in an unheated office in an environment that was the employment equivalent of solitary confinement. <u>Id</u>; Def. Exh. 5, pg 1, Pl. Formal Complaint of Discrimination dated March 3, 2003 and Def. Exh. 21, pg 2-3, Affidavit of Ira Johnson. Such harsh treatment would be detrimental to any employee's

career. In a hierarchical profession like law enforcement, it can be a death knell to any advancement. In addition to the obvious career setback, this treatment caused Ms. Davis a great deal of public and private humiliation, anxiety and loss of self–esteem.

Thus in view of all the surrounding circumstances, the extremely punitive nature of Ms. Davis' re-assignment was sufficient to meet the <u>Burlington Northern</u> standard. Viewing the treatment Ms. Davis received after she filed her EEO complaint, any reasonable law enforcement officer would be deterred in assisting her with her discrimination charge and/or deterred in filing his or her own charge.

Further, the fact that the assignment was temporary has little bearing on whether it was sufficiently retaliatory under the <u>Burlington Northern</u> standard. One of the alleged acts of retaliation in the case was the claim of the plaintiff, Ms. White, that her temporary suspension was retaliation even though the employer later rescinded the suspension and reinstated her with full back pay.

The Supreme Court held that, despite the temporary nature of the suspension, the plaintiff had a valid claim under section 704 of Title VII.  The anxiety that Ms. White experienced during the time of the suspension and the fact that she had no reason to know during that time that it would be temporary were sufficient to create a cause of action. The same considerations apply in Ms. Davis' case because she suffered the same kind of anxiety and emotional harm as Ms. White, in <u>Burlington Northern</u>.

However, even if the Court discounts the diminution of Ms. Davis' job duties and responsibilities as insufficient under <u>Burlington Northern</u>, she also intends to prove that the re-assignment damaged her economically because it resulted in a loss of overtime pay. Prior to her

re-assignment, Ms. Davis consistently received overtime, and the pay that went with it, as part of her duties as an investigative officer. Def. Exh. 8, Attachment 3, Pl. Depo. Because the defendant removed her investigative duties and assigned her almost no work during the re-assignment period, Ms. Davis lost that pay.  The pay losses associated with the re-assignment are thus enough in and of themselves to transform the re-assignment into a retaliatory act even under the pre-<u>Burlington Northern</u> standard.

The defendant contests Ms. Davis' proof of lost overtime from a factual standpoint. The defendant claims that Ms. Davis never requested any overtime during her re-assignment.  Def. Memo. Of Points and Authorities in Support of Def. Motion to Dismiss Or, in the Alternative, for Summary Judgment, pg. 12. It also claims that Ms. Davis received Law Enforcement Availability Pay (LEAP) during her re-assignment and that this was sufficient to offset any lost overtime.  <u>Id</u>.  Finally, it claims that a comparison of Ms. Davis' W-2's from the year of the re-assignment (2003) and the year after (2004) shows an increase in earnings. <u>Id</u>.

The defendant's first argument ignores the realities of Ms. Davis' re-assignment.  During that time, Ms. Davis was unable to request overtime since she had no access to the defendant's communication system.  Def Exh. 4, pg 10, EEO Counselor's Report; Def. Exh. 5, pg 1, Pl. Formal Complaint of Discrimination and Def. Exh. 21, pg 2-3, Affidavit of Ira Johnson. Denying her access to her office, her co-workers, as well as any electronic communications within her office precluded Ms. Davis from even becoming aware of what overtime assignments existed.

In addition, to the extent these assignments existed they would have been performing investigative duties. These duties would have involved her use of the computer for research, use of the telephone and e-mail to contact people and use of her government issued vehicle to

conduct interviews.  These were the very duties that the defendant had prohibited her from performing while on re-assignment.

Second, defendant's claim that Ms. Davis' LEAP pay offset her loss of overtime pay has no basis in fact. The defendant provides LEAP pay to Special Agents as part of their regular salary. Def Exh. 12, pg. 2, ¶ 5, Decl. of Blocker.  Ms. Davis received the same LEAP pay as an investigative officer even before the re-assignment. Id. Therefore, any LEAP pay she received during the re-assignment she would have received as an investigative officer anyway and cannot be offset against overtime pay lost during the re-assignment. Moreover, besides overtime, because Ms. Davis' re-assignment removed her from all her investigative duties, she also lost her night time differential pay.  Def. Exh. 5, pg 1, Pl. Formal Complaint of Discrimination and Def. Exh. 21, pg 2-3, Affidavit of Ira Johnson.

Finally, it is obvious that the defendant's last argument supports Ms. Davis' claim that the re-assignment resulted in a loss of income. If she earned less in 2003, the year of the reassignment, than she did in the year after (2004), in the absence of any other factors, it is more reasonable to infer that the re-assignment was the cause of this earnings diminution.

In a summary judgment motion, the Court must accept the truth of the facts as set forth by Ms. Davis and draw all reasonable inferences from those facts in her favor.  Adickes v. S.H. Kress & Co., 398 U.S. at 157; Bayer v. U.S. Dept. of Treasury, 956 F.2d at 333.  Because those facts and inferences support Ms. Davis' claims that she lost overtime pay and night time differential pay as a result of the re-assignment, she has demonstrated all the necessary elements to prove that her re-assignment was a material adverse action even under the most employer friendly interpretation of Burlington Northern.

### 2. The Defendant's Articulated Legitimate, Non-Discriminatory Reasons for Its Actions

Defendant has argued that the temporary reassignment was warranted and the issuance of a warning notice was proper because "Plaintiff had no business related reason to access or disclose this information." Def. Memo. Of Points and Authorities in Support of Def. Motion to Dismiss Or, in the Alternative, for Summary Judgment, Pg. 15. It claims that Ms. Davis' accessing and disclosing personnel information was a violation of the Privacy Act as well as internal Agency orders. Id. at 15-16. Defendant also argued that Ms. Davis' reassignment to non-investigative duties pending the OIG investigation into her misconduct was "standard practice." Id. at 18.  Finally Defendant claimed that Mr. Blocker treated Ms. Davis "in a lenient manner" by issuing only a letter of warning. Id

### 3. The Plaintiff Can Establish That Defendant's Legitimate, Non-Discriminatory Reasons For Its Actions Are Pretextual:

Defendant's legitimate non-discriminatory reason for reassigning Ms. Davis to administration is pretext for retaliation. The primary reason for this assertion is that the defendant has not provided credible reasons for which Ms. Davis was investigated for accessing and disclosing personnel information.

Mr. Blocker initially claims that he did not personally seek complaints against Ms. Davis but was forced to investigate her when her co-workers complained about her. Def Exh. 4, pg 8, EEO Counselor's Report and Def. Exh. 11. pg 1, Addendum Affidavit of Blocker. However, this is not borne out by the evidence.

According to Special Agent Malcolm Weeks, it was not until February 19, 2003, approximately a month after Ms. Davis was reassigned for accessing and disclosing this information to her co-workers, that Ms. Davis showed him the personnel information for the

promotions on her computer in her office. Pl. Exh. 2, Statement of Malcolm Weeks. As defendant concedes, at the time of Weeks' disclosure Ms. Davis was already reassigned to a building away from her co-workers where she had no access to a computer at the time. Given this concession, the defendant's allegation that the investigation began because Mr. Weeks' disclosed the fact that Ms. Davis accessed the information is not credible. Def. Exh. 11. pg 1, Addendum Affidavit of Blocker. Weeks disclosed this fact to the defendant *after* Ms. Davis was already re-assigned.

Further, Mr. Weeks statement does not even say he complained about Ms. Davis. Instead he indicated only that he told Mr. Blocker that he saw the information and that he wanted to thank management for processing his promotion. Id.

In the defendant's letter of referral for investigation to the Inspector General's Office, defendant indicated that it initiated the investigation against Ms. Davis because Special Agent Anderson Wright told management on January 17, 2003 that Ms. Davis had accessed the "K" drive on the agency computer.  Pl. Exh 1, Interview of Ronald Blocker. Among other things, this drive contained personnel information on FPS employees. Id. However, this cannot be true because, according to Mr. Wright it was Ms. Allison Poore, another co-worker, who told him how to access the "K" drive, not Ms. Davis. Def. Exh. 4, pg 13.

Defendant also has claimed that Ms. Davis was investigated because Ms. Davis had no business related reason to access or disclose the personnel information. Def. Memo. in Support of Def. Motion to Dismiss Or, in the Alternative, for Summary Judgment, Pg. 15. Mr. Blocker claimed that Ms. Davis was investigated because in his "mind there was an improper use of the system. This is not a common drive that is typically used by the office. I was under the impression that the drive was blocked at the time. I don't know how Ms. Davis was able to

access the drive." Def. Exh. 11. pg 2.

Mr. Blocker's rationale for the investigation should carry little weight because it is contradicted by information provided to him by defendant's Information Technology Services Specialist, Ms. Deborah Norton. Even before the investigation began, Ms. Norton informed Blocker that everyone in Ms. Davis' office had access to the "K" drive and that there was no proof that it was solely Ms. Davis who had done so. Pl. Exh 1, Interview of Norton dated March 25, 2003. Ms. Norton also told Blocker that Ms. Davis' supervisors had authorized her access to the "K" drive. Id.

Defendant's argument that Ms. Davis' reassignment to administrative duties was "standard practice" pending investigation of misconduct is also not credible. There is information in the record that will prove that the defendant, in fact, varied from this practice on at least two occasions while investigating the actions of other employees who had engaged in worse behavior than Ms. Davis.

In March 2000, two witnesses reported that Mr. Gregory Jefferson, Training Technician, had notes in his office about pornographic websites. Pl. Exh 3. pg. 1-3. Defendant's investigation of Mr. Jefferson's computer and office revealed six e-mails from pornography sites to Mr. Jefferson's government e-mail account, 34 printouts of sex-related websites and 418 pornographic images in his government issued computer. Pl. Exh 3. pg. 1-3. However, although the defendant investigated Jefferson, it neither restricted his access to the computer nor placed him on any kind of punitive re-assignment during the investigation. Id.

Further, James Bright, Federal Protective Officer, FPS, made unauthorized use of his government issued vehicle between April 2001 and October 2002 to visit his female friend's residence while in uniform. Pl. Exh. 4, pg. 2. However, his vehicle was not taken away. Id.

Mr. Blocker argued that he chose to investigate and discipline Ms. Davis as opposed to the other employees who accessed the same information around the same time because he believed that she must have known what she was doing was wrong. Def Exh. 11, pg 2. Blocker based this belief on his allegation that Ms. Davis allegedly told her co-workers not to tell management. Id.

However, Ms. Davis has evidence that disputes this allegation. According to Special Agent Ira Johnson, Ms. Davis told her co-workers, including himself, how to access the "K" and she said it "out loud about what she knew. She was not trying to keep it a secret." Def. Exh. 21, pg 2, Ira Johnson Affidavit dated May 8, 2003.  In fact, Ms. Davis told five other co-workers about this information in front of her supervisor Mr. John Baker and therefore, was clearly not trying to hide anything from management. Def. Exh. 4, pg 5.

 Besides, according to defendant's own claims, Ms. Poore also told Blocker that she "logged on to the K drive and retrieved various disciplinary actions".  Pl. Exh 1, Memorandum of OIG, Interview of Ronald Blocker. Defendant further concedes that Mr. Weeks accessed the "K" drive although, unlike Ms. Davis, he was not one of the Special Agents authorized to do so. Pl. Exh. 2, Statement of Malcolm Weeks and Pl. Exh 1, Memorandum of OIG, Interview of Ronald Blocker. However, neither Poore, nor Weeks, were investigated or disciplined in any manner. In contrast, Ms. Davis was investigated, reassigned to administrative duties and then issued a letter of warning.

In addition to the many contradictions in the defendant's explanations for investigating and re-assigning Ms. Davis, the above evidence clearly shows that the defendant treated Ms. Davis much more harshly than it treated similarly situated employees who had engaged in behavior that was much more detrimental to the defendant's mission than Ms. Davis'.  As the IG

investigation clearly found, it should have been clear from the start that the defendant had

authorized Ms. Davis' computer access and that the charges brought against her were not

warranted.  Despite that fact, for several months while it was awaiting the results of an

investigation that was a foregone conclusion, the defendant placed Ms. Davis in an environment

that was the employment equivalent of punitive detention.  In contrast, it did not take any action

against the other employees who had accessed the same information.

In addition, in other situations, where it was clear that employees like Mr. Jefferson and

Mr. Bright had engaged in wholesale violations of agency policy, they suffered no restrictions on

their job duties while the defendant investigated their misconduct.

Moreover, the defendant has not submitted admissible evidence to show that any of these

comparative employees had pending EEO claims. Although the defendant claims that Ms. Poore,

one of the employees who accessed the information at the same time that Ms. Davis did, but was

not investigated, had a complaint pending at the time, it has provided no documents to support

this fact. On p. 19 of the defendant opposition memo, the defendant cites a paragraph of

Mr. Blocker's Declaration as supporting the fact that Ms. Poore had filed a prior EEO complaint.

However, there is nothing in the declaration to indicate the date of the complaint or whether

Mr. Blocker had knowledge of this fact at the time that he started investigating Davis.  This is

simply an insufficient basis upon which to draw an inference that Blocker was not retaliating

against Ms. Davis. Moreover, it does nothing to explain why the defendant's did not commence

investigations against the other employees, who had not filed EEO complaints, and/or why it did

not re-assign them.

Thus it is clear that Ms. Davis has submitted more than sufficient evidence to prove that

the defendant's reasons for re-assigning her were not legitimate and that in fact they were pretexts for reasons related to her filing her EEO complaint only four months prior to the commencement of the investigation. This fact combined with the fact that she presented a strong prima facie case, (an EEO complaint filing followed a short time later by adverse treatment) is more than a sufficient basis for denying summary judgment. *Aka v. Wash. Hosp. Ctr.,* 156 F.3d at 1289 (a prima facie case, plus evidence of false or inconsistent reasons is normally sufficient grounds to infer discrimination and to deny summary judgment).

## CONCLUSION

Under these circumstances, the Defendant has simply not met its burden to present overwhelming and uncontroverted evidence that retaliation has not occurred. Reeves v. Sanderson Plumbing, 530 U.S. 133, 148 (2000). In order to obtain judgment as a matter of law, that is it what defendant must do.

For the foregoing reasons, the Court must deny the defendant's motion to dismiss and/or for summary judgment.

Respectfully Submitted,
FOR THE PLAINTIFF
CHERYL DAVIS,


By: _____/s/_____

       Bianca Karim
       DC Bar # 497834
       Jonathan L. Gould
       DC Bar # 491052
       KESTELL & ASSOCIATES
       1012 14TH Street, NW, Suite 630
       Washington, DC 20005
       (202) 347-3889
       (202) 347-4481
       email jgould@igc.org