IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

CHERYL DAVIS )
)
)
)
    Plaintiff, )
)
    v. )   Civil Action No. 05-1423 (HHK)
)
MICHAEL CHERTOFF, SECRETARY )
U.S. DEPT. OF HOMELAND SECURITY )   October 6, 2006
)
)
    Defendant )

---

**THE PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS A GENUINE ISSUE TO BE LITIGATED**

Pursuant to Local Rule 7.1(h) of the Local Rules of Civil Procedure, the plaintiff, Ms. Cheryl Davis, hereby submits her statement of material facts as to which there is a genuine issue to be litigated:

    I.  PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED FACTS:

1. Admit.

2. Admit.

3. Admit that Plaintiff accessed personnel information regarding promotions of other employees from her government computer and shared this information with members of her office. Deny that she viewed information about disciplinary actions. Def. Exh. 8, pg 33-34, Pl. Depo. Deny that the information was confidential. Id. at 33.

4. Deny that co-workers complained about Plaintiff's actions in accessing and disclosing

1

private personnel information. Pl. Exh. 2, Statement of Malcolm Weeks and Def. Exh. 4, pg 13, EEO Counselor's Report dated February 25, 2003. Mr. Weeks only told Mr. Blocker about viewing this information to thank Blocker for processing his promotion. Id.

5. Admit that Ronald Blocker moved Plaintiff to another office and did not authorize her to do any investigative work pending investigation. Deny that temporary reassignment pending an investigation was in accordance with Agency policy and past practices as other co-workers, namely Special Agents Allison Poore and Malcolm Weeks who both viewed the same information around the same time, and confessed to the defendant of doing as much, were not reassigned. Def Exh. 12, pg. 3, ¶ 9, Decl. of Blocker dated August 24, 2006.

6. Admit that Ms. Davis was not permanently reassigned in January of 2003 and that she remained in the in the position description of criminal investigator and received full Law Enforcement Availability Pay. Deny that Ms. Davis was not formally or officially reassigned as she was assigned to a different building from other investigators to administrative duties for five months. Def. Exh. 8, pg 33-34, Pl. Depo. and Def. Exh. 21, pg 2-3, Affidavit of Ira Johnson.

7. Admit.

8. Admit.

9. Admit.

10. Admit.

11. Admit.

12. Admit.

## II. PLAINTIFF'S STATEMENT OF DISPUTED FACTS:

1. On September 6, 2002, Ms. Davis filed a formal EEO complaint of sex discrimination against the defendant, naming her supervisors, including second level supervisor Mr. Ronald Blocker, when the defendant suspended her for 14 days but did not discipline her male co-workers for the same offense. Def. Exh. 1, pg 4 EEO Counselor's Report dated September 12, 2002. Defendant and its officials were aware of this complaint as the supervisors were interviewed at the informal stage of the complaint on or around August 21, 2002. Id. at 12-16.

2. Approximately four months later, around January 16, 2003, Mr. Ronald Blocker, Special Agent in Charge, and Ms. Mary Burnette, Supervisory Special Agent, questioned Special Agent Ira Johnson about giving Ms. Davis a ride from her home in Maryland in his government issued vehicle. Def. Exh. 21, pg 1-2, Affidavit of Ira Johnson dated May 8, 2003. Mr. Johnson told Mr. Blocker that he did not give Ms. Davis a ride. Id. Mr. Blocker then asked Mr. Johnson to produce the files on the case he was working on during that time to establish that he has in fact been conducting interviews for his case in Maryland and not picking up Ms. Davis from her home because she was having car trouble. Id.

Mr. Johnson was upset that the supervisors questioned him about giving Ms. Davis a ride because employees use government vehicles to pick up co-workers with management's knowledge but have not been investigated or interrogated about such use of government vehicles in his experience in the office for over eleven years. Id. at 2. Defendant was aware that Ms. Davis and Mr. Johnson were investigating partners and friends for over eleven years. Id. at 4. Interrogating Mr. Johnson about giving Ms. Davis a ride to work and reassigning her to a different office was defendant's was way of secluding Ms. Davis from her co-workers and friends in the office.

3. On or around January 21, 2003, Mr. Ronald Blocker, accused Ms. Davis of "improperly accessing private and confidential personnel information relating to others." Def. Exh. 11. pg 1, Addendum Affidavit of Ronald Blocker dated April 25, 2003. Mr. Blocker immediately reassigned Ms. Davis to Building 202 to unspecified administrative duties until the investigation into her conduct was completed. Def. Exh. 5, pg 1, Pl. Formal Complaint of Discrimination dated March 3, 2003.

4. There are conflicting accounts of which employee told defendant that Ms. Davis related the personnel information to him or her and when this information was relayed so as to trigger the investigation against Ms. Davis. Mr. Blocker stated that between January 19, 2003 and January 20, 2003, Criminal Investigator Malcolm Weeks informed him that Ms. Davis went around the office and showed co-workers data she located on the "K" drive. Pl. Exh 1, Memorandum of Office of Inspector General (OIG), Interview of Ronald Blocker dated February 4, 2003. According to Blocker, Mr. Weeks stated that the information Ms. Davis showed him included suspension letters and list of Criminal investigators who were eligible for promotion. Id.

5. However, Mr. Weeks' statement taken by defendant indicates that it was not until February 19, 2003, that he asked Ms. Davis showed him that the personnel information indicating that the promotions for the office were being processed. Pl. Exh. 2, Statement of Malcolm Weeks. Mr. Weeks also claims that he did not know that the information was posted in the personnel files and only told Mr. Blocker about viewing the information to thank him for processing the promotions. Id.

6. According to the letter of referral to Inspector General's Office it was on January 17, 2003, Special Agent Anderson Wright told defendant that Ms. Davis had accessed the "K" drive

4

in the computer system for the purpose of learning what personnel actions were being pursued to promote her co-workers. Pl. Exh 1, Interview of Ronald Blocker. However, according to Mr. Wright he does not recall Ms. Davis telling him about the "K" drive. Def. Exh. 4, pg 13, EEO Counselor's Report dated February 25, 2003.

    7. Mr. Blocker also claimed that on January 21, 2003, Agent Allison Poore met with him and confessed to logging on to the "K" drive and retrieving "various disciplinary actions." Pl. Exh. 1, Memorandum of Office of Inspector General, Interview of Ronald Blocker dated February 4, 2003. Mr. Wright also informed management that Ms. Poore told him that she accessed the personnel files contained in the "K" drive. Def. Exh. 4, pg 13, EEO Counselor's Report.

    8. Mr. Blocker claimed that he referred Ms. Davis' case to the Office of Inspector General as he was not "authorized" to investigate his own staff. Def. Exh. 11. pg 1, Addendum Affidavit of Blocker. However, the record is clear that Mr. Blocker himself talked to Mr. Weeks and Ms. Poore and did not refer them to the OIG.

    **9.** The defendant's concedes that neither Mr. Weeks nor Ms. Poore were disciplined for accessing the same information. Def Exh. 12, pg. 3, Decl. of Blocker dated August 24, 2006.

    10. Mr. Blocker claims that Ms. Davis was not reassigned but "relocated" to "Building 202, to work on the Crime Analysis and Record Management, to look at the quality assurance of the police reports. This is still a part of Investigations." Def. Exh. 11. pg 2, Addendum Affidavit of Blocker. However, the functions in Building 202 have "very little to do with investigations." Def. Exh. 21, pg 3, Affidavit of Ira Johnson dated May 8, 2003. Besides without a computer Ms. Davis would not be able to handle "investigation assignments" as "(s)he cannot even access her communications, e-mails etc." in that building. Id.

5

11. On February 21, 2003, while reassigned to Building 202, Ms. Davis was given investigative duties by Mr. John Baker, Ms. Davis immediate supervisor, that required her to use a computer, telephone and have access to a government vehicle to do interviews. Def. Exh. 5, pg 1, Pl. Formal Complaint of Discrimination. The work on these cases had to be completed within 45 days and without having access to a computer or a vehicle, she was unable to work on these assignments. Id.  This caused Ms. Davis additional stress and anxiety.

12. The Office of Inspector General cleared Ms. Davis of any misconduct by upholding Ms. Norton's finding that Ms. Davis was authorized to access the information and had not taken any extraordinary steps to access the personnel file. Pl. Exh. 1, Memorandum of Office of Inspector General (OIG) for Joseph Trindal, Director of Federal Protective Service dated April 9, 2003.

13. According to Mr. Blocker, the OIG report issued on April 9, 2003 gave "instructions to conduct further inquiry if necessary." Def. Exh. 12, pg. 2, ¶ 5, Decl. of Ronald Blocker dated August 24, 2006. He conducted "further inquiry" by getting a statement from Mr. Malcolm Weeks who was available for the initial investigation around January 21, 2003. Id. Finally on May 7, 2003, five months after the alleged incident, Mr. Blocker issued Ms. Davis a Warning Notice for viewing personnel information on her computer and authorized her to return to her investigative duties in her old office with the other investigators. Id.

14. Defendant delayed reassigning Ms. Davis back to her investigative duties for five months after Computer Coordinator, Ms. Deborah Norton notified defendant that Ms. Davis was authorized to view the information by the defendant and one month after the Office of Inspector General reached the same conclusion. Pl. Exh 1, Interview of Norton dated March 25, 2003 and E-mails dated March 26, 2003 and OIG Memorandum for Joseph Trindal.

Respectfully Submitted,
FOR THE PLAINTIFF
CHERYL DAVIS,


By:_____/s/_____
       Bianca Karim
       DC Bar # 497834
       Jonathan L. Gould
       DC Bar # 491052
       KESTELL & ASSOCIATES
       1012 14TH Street, NW, Suite 630
       Washington, DC 20005
       (202) 347-3889
       (202) 347-4481
       email jgould@igc.org