## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CHERYL DAVIS,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| V. | ) | Civil Action No. 05-1423 (HHK) |
| | ) | |
| **MICHAEL CHERTOFF, SECRETARY** | ) | |
| **UNITED STATES DEPARTMENT OF** | ) | |
| **HOMELAND SECURITY,** | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |
| | ) | |

## DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO ITS MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Defendant, Michael Chertoff, Secretary of the Department of Homeland Security, by his undersigned attorneys, submits this reply to Plaintiff's Opposition to Defendant's Motion to Dismiss or In the Alternative, For Summary Judgment ("Defendant's Motion"). The Defendant also replies to the Plaintiff's October 24, 2006 Notice to the Court of Recent Court of Appeals Decision.

The Plaintiff has alleged that the Defendant retaliated against her when the Defendant "cited her for accessing confidential personnel information and reassigned her to a less desirable area and relieved her of her case processing duties." Amended Complaint, p. 4. The Plaintiff further alleged that "her coworkers who accessed the very same information were not even cited for the incident and the difference in treatment was motivated by management's animosity toward Plaintiff because of her filing the prior EEO complaint." Id.

Defendant moved to dismiss or, in the alternative, for summary judgment. Defendant argued that the Plaintiff could not show the requisite adverse action for a temporary reassignment and letter of warning that she received. Defendant further argued that the Plaintiff could not establish a prime facie case of retaliation. Even if the Plaintiff could establish a prima facie case, the Defendant argued that it had articulated legitimate, non-discriminatory reasons for its actions, and the Plaintiff could not show that these actions were pretextual.

In her Opposition, the Plaintiff asserts that there are disputed issues of material fact, which would preclude summary judgment. Specifically, she contends that it is disputed: 1) whether she had access to the folder of personnel information located on the K drive; 2) whether she violated policies and procedures; 3) whether it is standard practice to reassign employees pending investigations of misconduct; 4) whether she lost significant overtime pay that she regularly earned in conducting her investigative duties; and 5) whether the Office of Inspector General exonerated the Plaintiff. Opposition, pp. 1-2.

Contrary to Plaintiff's contentions, a careful review of the evidence reveals that there is no genuine issue of material fact. First of all, several of the facts that the Plaintiff alleges are disputed are not facts which are material to the complaint. Second, in an attempt to dispute the facts, the Plaintiff relies solely on bald, conclusory and unsubstantiated assertions. Such bald, conclusory assertions, that are not based on specific facts and evidence in the record, are insufficient to survive a motion for summary judgment. Indeed, a careful cross-reference of the citations in the Plaintiff's statement of disputed material facts reveals that the oft-cited evidence does not support the preceding asserted "fact". Accordingly, this case should be dismissed or summary judgment entered in defendant's favor.

A.  **PLAINTIFF FAILS TO CREATE ANY GENUINE ISSUE OF MATERIAL FACT.**

1.  **There is no genuine issue of material fact regarding Plaintiff's access to the personnel folder located on the "K" drive.**

The Plaintiff asserts in her Opposition that she had authorized access to the K drive, that the personnel folder on the K drive was not password protected and that she did not take any unauthorized steps to access the folder. Opposition, p. 5. None of these facts are disputed; none are material.

The Plaintiff did not receive a letter of warning for illegally hacking into the K drive or the personnel folder. Rather, she was disciplined because she had no official reason to access the information and did not do so in the performance of her duties. See Letter of Warning, Def Exh. 17; Anderson Affidavit, Def Exh. 14, p. 3, paragraph 7; Blocker Declaration; Def Exh. 12, paragraph 7, p. 2. Plaintiff also showed the information to others and copied it onto her user drive for no official purpose. Id. These material facts are not disputed.

It is also undisputed that the Plaintiff had no official reason to access the personnel information. Anderson Affidavit, Def Exh. 14, p. 3, paragraph 7; Blocker Declaration; Def Exh. 12, paragraph 7, p. 2; Plaintiff's Deposition, pp. 33-34, Def Exh. 8. It is undisputed that the Plaintiff did not access the information in the performance of her duties. Id.

It is also undisputed that the Plaintiff shared the information with numerous co-workers and instructed the co-workers how to access the information. See Plaintiff's Response to Defendant's Statement of Undisputed Facts, paragraph 3; Defendant's Statement of Material Facts, paragraph 3; Affidavit of Johnson, Def Exh. 21, p. 1; Declaration of Anderson Wright, Def. Exh. 32, paragraphs 2 and 3; EEO Counselor's Report, Def. Exh. 4, Interview of Cheryl Davis, pp. 4-7 and Interview of Anderson Wright, pp. 13-14. It is undisputed that the Plaintiff publicly shared information about other employees' promotions. Johnson Affidavit, Def. Exh.

21, p. 1; EEO Counselor's Report, Def. Exh. 4, p. 13, Interview of Anderson Wright; Wright

Declaration, Def. Exh. 32; Blocker Addendum Affidavit, Def. Exh. 11, p. 1; Blocker

Declaration, Def. Exh. 12, p. 2, paragraph 7; Plaintiff's Response to Defendant's Statement of

Undisputed Facts, paragraph 3; Plaintiff's Deposition, pp. 33-34, Def. Exh. 8. It is undisputed

that many of the employees with whom the Plaintiff shared the personnel information, including

Malcolm Weeks, Kenneth Morris and Alexander Peterson, could not access the K drive. See

OIG Report, e-mail from Norton to Ingol, dated March 26, 2003, Subject: Investigative

Information, Def. Exh. 13; Declaration of Malcolm Weeks, Def. Exh. 33, p. 2, paragraph 2.

Although the Plaintiff denies that she actually retrieved or reviewed disciplinary actions,

it is undisputed that disciplinary actions were located in the personnel folder and that the

Plaintiff discovered the disciplinary actions in January of 2003. Plaintiff's Deposition, p. 67:11-

25, Def. Exh. 8. It is undisputed that several employees reported to either Ronald Blocker or

Anderson Wright that the Plaintiff retrieved and reviewed disciplinary actions in the folder. OIG

Report, Def. Exh. 13; Wright Declaration, Def. Exh. 32; Blocker Addendum Affidavit, Def. Exh.

11, p.1; Blocker Declaration, Def. Exh. 12, p. 1, paragraph 3.

It is also undisputed that the Plaintiff copied the information onto her user drive. See

OIG Report, Def. Exh. 13; Defendant's Statement of Undisputed Material Facts, paragraph 3;

Plaintiff's Response to Defendant's Statement of Undisputed Facts, paragraph 3. It is

undisputed that Davis not only failed to report the unprotected information to management but

also tried to actively cover up her access. See Statement of Malcolm Weeks, Plaintiff's Exh. 2;

Addendum Affidavit of Ronald Blocker, Def. Exh. 12, p. 1; OIG Report, Def. Exh. 13.

4

**2. There is no genuine issue of material fact that the Plaintiff violated federal law and agency policies by her actions.**

The Plaintiff presents no facts or evidence to refute the Defendant's assertion that she violated various polices and procedures. The Defendant cited to and attached numerous policies and federal laws that the Plaintiff violated by accessing, reviewing, and disclosing personnel information without an official purpose and outside the scope of her employment. See Defendant's Motion to Dismiss and For Summary Judgment, pp. 15-17; Def. Exh. 14, 27 to 31. In addition to the various orders cited in the Defendant's Motion, the Plaintiff's conduct violated the Agency's Table of Penalties, which describes various types of delinquency or misconduct. See Anderson Declaration, Def. Exh. 14; Disciplinary Desk Guide, Def. Exh. 19. Item 1 in the Table of Penalties, Def. Exh. 19, part 1 of 5, proscribes unauthorized use of government property or services and carries a penalty of suspension to removal. Item 28 in the Table of Penalties, Def. Exh. 19, part 5 of 5, sets forth a penalty of reprimand to removal for unethical or improper use of official authority or unauthorized disclosure or use of official information.

Moreover, whether Plaintiff violated federal law and/or agency policies is not a material fact. A violation of law, regulation or policy is not required to support a letter of warning. Rather, disciplinary action may be issued for any cause as would promote the efficiency of the service. See 5 USC §7503 (a); Russo v. United States Postal Service, 284 F. 3d 1304 (C.A. Fed. Cir., 2002).

The Plaintiff claims she did not know her actions were wrong or violated any regulations. Yet, the purpose of a letter of warning is to inform an employee of the impropriety of their actions and to prevent recurrence. Anderson Declaration, dated August 18, 2006, ¶6, p. 2, Def. Exhibit 14; GSA Order OAD P 5410.1, p. 114, paragraph 111, Def. Exhibit 18; GSA/NCR

Human Resources Division, Disciplinary Desk Guide, p. 4, Def. Exhibit 19; Blocker

Declaration, dated August 24, 2006 ¶6, Def. Exhibit 12.

**3. There is no genuine issue of material fact whether the Plaintiff was deprived of significant overtime pay during her temporary reassignment.**

As set forth in the Defendant's Motion, pp. 18-19, the Plaintiff has not presented any

specific, probative evidence that she was deprived of any available overtime opportunities during

her temporary reassignment[1]. Plaintiff only offers speculation and bald, conclusory assertions to

support her allegations – all of which are insufficient to defeat summary judgment. Opposition,

pp.14, 15.

The Plaintiff cites to Blocker's Addendum Affidavit, Def. Exh. 11, p. 1; Johnson's

Affidavit, Def. Exh. 21, pp. 2-3; her tax forms, Def. Exh. 8, Attachment 3; and her formal

complaint of discrimination, Def. Exh. 5 as supporting her contention that she was deprived of

overtime pay and nighttime differential. Opposition, pp. 4, 15. A review of Blocker's Addendum

Affidavit, Def. Exh. 11 and Johnson's Affidavit, Def. Exh. 21 reveal that neither document

makes any mention of denial of overtime pay or night differential.  The Formal Complaint, Def.

Exh 5, which contains only Plaintiff's allegations, is not sufficient to defeat summary judgment.

Admittedly, the Plaintiff's reported taxable income in the year 2004 exceeded that of

2003 by $5,527 dollars.  See 2003/2004 Tax Returns, Def. Exh. 8, Attachment 3.  However, no

reasonable inference can be drawn from the evidence of record that this difference was due to

denial of overtime opportunities during her temporary reassignment.  The increase in taxable

earned income could also be due to any number of factors, such as a salary or locality pay

increase or a receipt of more monetary awards in 2004 compared with 2003.  In fact, a

comparison of Plaintiff's Standard Form 50s for January of 2003 and January of 2004 (Def. Exh.

---

[1]Notably, the Plaintiff never raised discriminatory denial of overtime opportunities or pay as a separate claim. See Complaint, ¶ 14; Amended Complaint, ¶ 19.

34 and 35) reveals that the Plaintiff's total pay increased by $5,948 due to a step increase from a GS-12, Step 3 to a GS-12, Step 4, an increase in basic pay, and an increase in the locality adjustment. This increase in salary is approximately the same amount as the increase in taxable earned income reported by the Plaintiff. The difference may also be attributable to a reduction in the number of pre-tax deductions, such as for retirement or flexible spending accounts, which would increase the Plaintiff's taxable income[2].

At any rate, a comparison of overtime pay in different calendar years is not probative evidence of any denial of overtime opportunities from January 2003 to May 2003. Plaintiff admitted that she received overtime pay primarily for special events such as demonstrations. It was not a regularly recurring entitlement. See Plaintiff's Deposition, p. 52:1-9, Def. Exh. 8. Thus, there may simply have been more special events during certain time periods than others.

During discovery, Plaintiff failed to produce any evidence supporting her claim of lost overtime during the temporary reassignment. Defendant posed several interrogatories requesting a detailed explanation of how she calculated damages, to include overtime. In response, Plaintiff merely stated that she was claiming overtime losses of $31,580.00, without providing any further explanation of the basis for this calculation. Plaintiff's Response to Interrogatory No. 5; Def. Exh. 36; Plaintiff's Response to Second Interrogatory No. 1, Def. Exh. 37. The Defendant also requested all documents supporting the claim for damages. Plaintiff's response only referred to Attachment 3, which consisted of her tax returns, her 2004 W-2 form, and her medical records. See Plaintiff's Response to Document Request No. 8, Def. Exh. 38.

The Plaintiff did not submit any W-2 forms or pay statements which establishes the amount of overtime or night differential pay in the years preceding and succeeding 2003. She

---

2 Only the Plaintiff's 2004 W-2 was provided to the Defendant. The W-2 reveals that in 2004, the Plaintiff contributed only $400.00 to her 401K Thrift Savings Plan and did not participate in the flexible spending account program. Def. Exh. 8, Attachment 3.

did not submit any witness statements from similarly situated employees who worked specific

overtime events during her temporary reassignment from January 2003 to May 2003. The

Plaintiff admitted in her Opposition that she is not aware of what, if any overtime assignments

existed. Opposition, p. 14. She speculated that "to the extent these assignments existed, they

would have been performing investigative duties". Id. Mere speculation that such overtime

assignments existed and that, if they did, she would not have been permitted to work them is

insufficient to create a genuine issue of material fact or defeat summary judgment.

The Plaintiff's assertion that she lost over $31,000 during the temporary 4-month

assignment is not only unsupported by any evidence of record, but also defies reason. The

evidence shows that the reassignment lasted approximately 4 months. Plaintiff's deposition, p.

35:7-10, Def. Exh. 83; Blocker Declaration, Def. Exh. 12, ¶3 and 8, pp. 1-2. If the lost overtime

totaled $31,000 during the temporary reassignment, as alleged by Plaintiff, this amounts to over

$7,000 in overtime per month, which is patently fallacious.

The Plaintiff's argument about LEAP pay is unavailing. As set forth in the Defendant's

Motion, Plaintiff's receipt of LEAP pay establishes that she could not receive significant

amounts of overtime pay. Defendant's Motion, p. 19; see FPS Policy for Implementation of

LEAP Pay, Def. Exh. 22; GSA Instructional Letter, OAD IL-95-4, Subject: Law Enforcement

Availability Pay, dated June 8, 1995, paragraph 2c, e, h, j and paragraph 7, Def. Exh. 41. See

also 5 CFR §550.183 et seq). She could not receive any overtime pay on a regular workday

unless she worked more than 10 hours. Id. Plaintiff could not receive any overtime pay for

overtime work which was unscheduled or which was scheduled during the administrative

workweek, even if it occurred on evenings or weekends. Id. Plaintiff could only receive

---

3 The Plaintiff estimated that it lasted from February 2003 to the end of May/beginning of June
2003.

overtime pay for overtime hours scheduled in advance of the administrative workweek. (See
LEAP Policy, Def. Exh. 22; GSA Instructional Letter, OAD IL-95-4, dated June 8, 1995,
paragraph 2c, e, h, j and paragraph 7, Def. Exh. 41. See also 5 CFR §550.183 and 185).

In accordance with federal personnel regulations and agency policies, LEAP pay may be
suspended or revoked if an employee is not performing criminal investigator duties and/or is not
meeting substantial hours requirements. GSA Instructional Letter, OAD IL-95-4, dated June 8,
1995, paragraph 5 and 5c, Def. Exh. 41. See also 5 CFR §550.183 and 184. Thus, if the
Plaintiff was truly performing only administrative duties for 4 months and not meeting the
substantial hours requirement, the Defendant could have legally suspended her LEAP pay during
that time period. The fact that the Defendant continued the Plaintiff's full LEAP during her
temporary reassignment Defeats Plaintiff's argument that she suffered any economic loss
sufficient to establish an adverse action.

**4. There is no genuine issue regarding whether it is standard practice to reassign
employees pending investigations of misconduct.**

In support of its Motion, the Defendant provided a sworn declaration that described the
Agency's practice to reassign law enforcement employees while an investigation into
misconduct is pending. Anderson Declaration, Def. Exh. 14, paragraph 5, p. 2. John Baker also
provided a sworn declaration stating that employees who are subject to a pending investigation
or disciplinary action have been traditionally relocated to Building 202. Baker Affidavit, Def.
Exh. 20, p. 2. The Plaintiff failed to rebut these declarations with any admissible evidence.
Thus, Plaintiff cannot create any genuine issue of material fact regarding the Agency's policy.

In her Opposition, the Plaintiff attempts to establish that Defendant treated her differently
by referring to two other similarly situated employees. First, Plaintiff claims that Defendant did
not restrict the computer access of Gregory Jefferson, Training Technician, nor place him on any

9

kind of punitive re-assignment during an investigation into his misconduct. Opposition, p.18.

She cites to Plaintiff's Exhibit 3, which is a proposed 30-day suspension issued in 2000.

However, nothing in the proposal letter indicates whether or not Jefferson was reassigned or had

his computer access revoked during the investigation into his misconduct.

Plaintiff then contends that James Bright did not have his government vehicle taken away

while under investigation. Plaintiff's Exhibit 4. Plaintiff relies upon proposed and final

disciplinary action letters. Opposition, p.18. Neither of these documents contains any

information regarding Mr. Bright's status during the investigation into his misconduct. Hence,

Plaintiff has failed to establish that either Mr. Jefferson or Mr. Bright were treated differently.

Thus, the Plaintiff cannot create a genuine issue of material fact about the Agency's

reassignment policy by mere suppositions and bald assertions.

**5. There is no genuine issue of material fact regarding whether the Office of
Inspector General exonerated the Plaintiff.**

For the reasons set forth above in paragraph A1 above, there is no genuine issue of

material fact whether the Office of the Inspector General ("OIG") "exonerated" the Plaintiff.

The OIG did not state that the allegations were unsubstantiated and close the case. Blocker

Declaration, Def. Exh. 12, p. 2, paragraph 5; OIG Report, Def. Exh. 13. Rather, the OIG

referred the issue back to FPS management for further inquiry and appropriate action. Id.

As is evident on the face of the report, the OIG merely determined that the case did not

warrant further investigation by the OIG. Def. Exh. 13. There are many administrative offenses,

not involving serious criminal misconduct or fraud, waste, and abuse that are investigated by the

immediate supervisor, rather than the OIG. See Disciplinary Guide, and attached Table of

Penalties, Def. Exh. 19, which requires only Table II offenses be referred to the OIG. Only an

employee's supervisor, not the OIG, can determine whether disciplinary action is warranted. See Disciplinary Guides and Orders, Def. Exh. 18 and 19.

The OIG only determined that the Plaintiff had access to the K drive, and that she took no extraordinary measures to access the personnel folder within the K drive. (OIG Report, Def. Exh. 13). As explained above, the Plaintiff did not receive a letter of warning for illegally hacking into the K drive or the personnel folder. Rather, she was disciplined for accessing, viewing, and disclosing the information without an official business reason. Accordingly, there is no genuine issue of material fact whether the OIG exonerates the Plaintiff.

## B. THE PLAINTIFF CANNOT ESTABLISH THE REQUISITE ADVERSE ACTION TO STATE A CLAIM OR ESTABLISH A PRIMA FACIE CASE.

In her Opposition, the Plaintiff does not controvert the Defendant's arguments and evidence that the letter of warning does not constitute an adverse action sufficient to establish a prima facie case of retaliation under Title VII. See, e.g., Cruz v. Snow, 402 F. Supp. 2d 113 (D.D.C. 2006)(finding that a letter of warning was not an adverse action). Thus, the Defendant's Motion to Dismiss and For Summary Judgment should be granted with respect to the claim regarding issuance of the letter of warning.

In her Opposition, the Plaintiff focuses solely on whether her temporary reassignment constitutes an adverse action. In her supplemental filing, the Plaintiff adds a new allegation, mirroring the allegations in Velikonja v. Gonazales, --- F. 3d---, 2006 WL 2946379 (D.C. Cir. 2006) – i.e. that her temporary reassignment prevented her from obtaining "career-enhancing assignments".

The Plaintiff's assertion that her temporary reassignment was the "employment equivalent of solitary confinement" is pure hyperbole, which is unsupported by even a scintilla of evidence. As set forth in paragraph A3 above, the Plaintiff has presented no specific,

probative evidence of economic loss related to the temporary reassignment. She has presented

no specific, probative evidence that the temporary reassignment deprived her of any promotions

or career-enhancing opportunities/assignments. The Plaintiff offered no evidence such as

affidavits from witnesses, phone work orders, maintenance orders, that her office was cold,

isolated, or substandard, or that she did not have the requisite tools to perform her assigned

duties.

In support of her contentions, the Plaintiff cites only to her Formal Complaint of

Discrimination. Def. Exh. 5, and Johnson Affidavit, Def. Exh. 21, pp. 2-3. The Formal

Complaint of Discrimination contains only the Plaintiff's allegations and thus does not constitute

probative "evidence." Johnson's Affidavit, Def. Exh. 21, only verifies that the Plaintiff did not

have computer access; it makes no reference to the environment or conditions in Building 202.

In fact, Johnson states that at one point he was assigned to work in Building 202, Johnson

Affidavit, Def. Exh. 21, Q4, p. 3, indicating that other employees who had not engaged in prior

EEO activity also worked at Building 202.

The uncontroverted evidence shows that the Plaintiff remained part of the Criminal

Intelligence and Investigations Section (CIIS). Blocker Addendum Affidavit, pp. 1-2, Def. Exh.

11. She simply moved to another building, which housed other employees of CIIS, and

performed work for Crime Analysis and Records Management. Blocker Addendum Affidavit,

pp. 1-2, Def. Exh. 11; Blocker Supplemental Declaration, dated October 18, 2006, paragraphs 3-

5, Def. Exh. 39. The Plaintiff continued to work on her outstanding investigations, in addition to

reviewing police reports for Crime Analysis. Blocker Addendum Affidavit, pp. 1-2, Def. Exh.

11; Baker Declaration, Def. Exh. 20, p. 5. While she was not physically co-located with other

criminal investigators, she continued to have both business and social contact with them.

Blocker Addendum Affidavit, pp. 1-2, Def. Exh. 11; Baker Declaration, Def. Exh. 20, p. 5; Plaintiff's Deposition, p. 35:2-25, Def. Exh. 84.

There is absolutely no evidence that the Plaintiff's office was cold or substandard or that she did not have the requisite tools to perform her assigned duties. Blocker Supplemental Declaration, dated October 18, 2006, paragraphs 3-5, Def. Exh. 39. Even if the Plaintiff could establish that her office space was somehow substandard, this does not constitute an adverse action under either the pre or post Burlington standard. See, e.g., Wooten v. St. Francis Med. Ctr, 108 Fed. Appx. 888, 891 (5th Cir. 2004)(finding that plaintiff's move from a five-by-ten cubicle shared with four other employees to an office converted from a storage area did not constitute an adverse action); Hamlett v. Gonzales, 2005 WL 1500819 (N.D. Tex 2005)(office assignment does not constitute an adverse action).

Contrary to the Plaintiff's argument, her case is not comparable to that of the Plaintiff in Burlington Northern & Sante Fe Railway Co. v. White, 126 S. Ct. 2405 (2006). The Plaintiff in Burlington (White) was indefinitely suspended from work without pay for 37 days, during the holidays. She did not know whether or when she could return to work. She did not know at the time of the indefinite suspension that it would later be rescinded. Moreover, White produced considerable evidence that she suffered emotional distress related to the indefinite suspension and obtained medical treatment for this distress.

Here, Davis' reassignment was temporary pending the completion of the OIG investigation and she knew it was temporary at the time she was reassigned. Blocker Addendum Affidavit, pp. 1-2, Def. Exh. 11; Baker Declaration, Def. Exh. 20; Formal Complaint, Def. Exh. 5, p. 2. In her formal complaint, Def. Exh. 5, p. 2, which was filed on March 1, 2003, the Plaintiff specifically states, "I was told that the IG was doing an investigation and that I would

---

4 The Plaintiff states that her co-workers invited her over for cake on her birthday.

13

be reassigned to unspecified administrative duties until the investigation was completed."
During her temporary reassignment, she remained in the same position description and worked
in the same division. Blocker Declaration, dated August 24, 2006, ¶3, pp. 1-2, Def. Exh. 12;
Plaintiff's Deposition, pp. 60:4 to 23; 69:2 to 6, Def. Exh. 8. Moreover, unlike White, during the
temporary reassignment, the Plaintiff received full pay and benefits, including an additional 25%
of her base salary as LEAP pay. Id. This is indisputably not the type of action that a reasonable
employee would have found materially adverse.

The Plaintiff's case is also not comparable to that of the Plaintiff in Velikonja v.
Gonzales, 2006 WL 2946379 (D.C. Cir. 2006). In Velikonja, the D.C. Court of Appeals did not
decide the issue of whether a mere investigation constitutes an adverse action. Id. It determined
that Velikonja could state a claim because she was subjected to a lengthy investigation (15
months), she was prevented from receiving promotions during the pendency of the investigation,
and her employer, the FBI, placed a cloud over her career, which effectively prevented her from
obtaining other career-enhancing assignments for which she was highly qualified. See Velikonja
v. Gonzales, 2006 WL 2946379 (D.C. Cir. 2006). According to Velikonja, she was transferred
from the National Security Law Unit to the Procurement Law Unit on July 23, 2001 and
remained there until she resigned from the FBI on September 4, 2003, a period exceeding two
years. Id. The National Security Law Unit, unlike the Procurement Law Unit, handled some of
the most sensitive information within the FBI. Id. Because of her transfer to the Procurement
Law Unit, Velikonja was prevented from obtaining a promotion and a supervisory position as
Unit Chief of the FISA Unit within the National Security Law Unit. Id. She lacked training for
the Procurement Law Unit and thus felt that she was being set up to fail and be fired. Id. Prior
to being reassigned to the Procurement Law Unit, Velikonja was assigned temporarily to
Macedonia for several months. Id.

14

Here, Davis was reassigned for <u>no more</u> than 5 months (closer to 4 months). Plaintiff's deposition, p. 35:7-10, Def. Exh. 85; Blocker Declaration, Def. Exh. 12, ¶3 and 8, pp. 1-2. As set forth above, she remained in the same position description and worked in the same division. Blocker Declaration, dated August 24, 2006, ¶3, pp. 1-2, Def. Exh. 12; Plaintiff's Deposition, pp. 60:4 to 23; 69:2 to 6, Def. Exh. 8. Unlike Velikonja, Davis has presented absolutely no evidence that she applied for or was due a promotion during the temporary reassignment, or that she was otherwise deprived of any career enhancing assignments. This is indisputably not the type of action that a reasonable employee would have found materially adverse. Thus the Plaintiff cannot survive summary judgment or even a motion to dismiss.

### C. THE COMPLAINANT FAILS TO ESTABLISH NEXUS BETWEEN HER PROTECTED ACTIVITY AND ANY ACTION TAKEN BY THE AGENCY.

Even assuming arguendo that the temporary reassignment and letter of warning constituted adverse actions, the Plaintiff fails to show any connection between these actions and her protected activity. The Plaintiff claims that nexus is established by temporal proximity between the date she filed a formal complaint and the date of her reassignment. Opposition, p. 10. The period of time, however, between the filing of her formal complaint (September 6, 2002) and the date of her temporary reassignment (January 21, 2003), which is more than 4 months, is too long to establish the requisite nexus. See, e.g., <u>Clark County School Distrcit v. Breeden,</u> 532 U.S. 268, 273-74, 121 S. Ct. 1508 (2001)(citing with approval cases dismissing retaliation claims where adverse employment action followed protected activity by three to four months); <u>Hughes v. Derwinski</u>, 967 F. 2d 1168, 1174 (7th Cir. 1992)(no inference of causal connection when four months elapsed between employee's filing and his receipt of first disciplinary letter); <u>Woods v. Bentson,</u> 889 F. Supp. 179, 187 (E.D. Pa 1995)(holding that generally no inference of

---

5 The Plaintiff estimated that it lasted from February 2003 to the end of May/beginning of June.

causation is created if at least four months pass after the protected action without employer reprisal); Parrot v. Cheney, 748 F. Supp 312 (D. Md. 1989)(less than four months does not support an inference). The time period between the Plaintiff's filing and the letter of warning in May of 2003 was even greater.

Moreover, any inference of retaliatory motive is weakened by the Plaintiff's prior disciplinary record. This is not a case where the Plaintiff had years of unblemished federal service and, only after engaging in protected activity, was subjected to a disciplinary action. The Plaintiff had at least two prior (and more severe) disciplinary actions for similar unethical conduct. In 1991, she was suspended for 3 days for misuse of a government credit card. (Plaintiff's Deposition, p. 8:10 to 17, Def. Exh. 8). She was suspended for 14 days in July of 2002, for violation of regulations where the safety of persons or property is endangered. (See Def. Exh. 23-25).

Moreover, at least one of the persons whom the Plaintiff alleges accessed personnel information and was not disciplined (Allison Poore) had engaged in recent prior EEO activity against Ronald Blocker. Blocker Declaration, Def. Exh. 12, p. 3, paragraph 9. See also Maltby Declaration, Def. Exh. 40. Thus, there is no basis for any finding of retaliation.

## D. THE PLAINTIFF CANNOT MAKE ANY SHOWING THAT THE DEFENDANT'S LEGITIMATE, NON-DISCRIMINATORY REASONS ARE PRETEXTUAL.

The Plaintiff contends that she has made a sufficient showing of pretext to survive summary judgment because the Defendant provided inconsistent and incredible reasons for initiating the investigation and not permitting the Plaintiff to resume her investigative duties. Opposition, pp. 3, 16-20. The alleged inconsistencies appear to be mostly smoke and mirrors. To the extent, however, there are any such inconsistencies, they are too insignificant to defeat summary judgment on the issue of pretext. See ,eg., Paquin v. Fed. Nat'l Mortgage Ass'n, 119

16

F. 3d 23, 27-28 (D. C. Cir. 1997)(if the plaintiff is unable to adduce evidence that could allow a reasonable trier of fact to conclude that Defendant's proferred reason was a pretext for discrimination, summary judgment must be entered against plaintiff).

The Plaintiff claims that Blocker's assertion that he received complaints by co-workers is not borne out by the evidence. She asserts that, according to Malcolm Weeks' statement, Plaintiff's Exh. 2, she did not show Weeks the personnel information until February 19, 2003, after she was relocated. Mr. Weeks has stated in his declaration that the listing of February 19, 2003 is an error. See Weeks Declaration, Def. Exh. 33. According to Mr. Weeks, Davis showed him the information when she was still located in the office, before her temporary reassignment. Id.

The fact that Plaintiff showed Weeks the information prior to her reassignment in January is also supported by her own testimony and her own recitation of undisputed facts. See Defendant's Statement of Undisputed Material Facts, paragraph 5; Plaintiff's Response to Defendant's Statement of Undisputed Facts, paragraph 5. Further, the Plaintiff did not have computer access to the K drive after she was relocated to Building 202 in January of 2003. Therefore, it would have been impossible for the Plaintiff to have shown Weeks the information in February of 2003. It is clear that Blocker knew Plaintiff had shown the information to Weeks before her reassignment and prior to February 19, 2003. See Blocker OIG Statement, dated February 4, 2003, Def. Exh. 13. Weeks also informed Anderson Wright that Davis had shown him the information prior to Wright's reporting it in January of 2003. Wright Declaration, Def. Exh. 32. Hence, a minor inconsistency in the date, which is obviously an error, is insufficient to survive summary judgment.

Similarly, the Plaintiff's strained and distorted reading of the EEO counselor's summary of her interview with Anderson Wright, which defies the plain meaning of the document, is not

17

sufficient to create a material issue of fact. A review of Wright's testimony clearly reveals that he reported Davis for accessing the information and showing co-workers how to access it. Def. Exh. 4, p. 13. Poore only demonstrated to Wright, upon his request, how Davis had gained access. Def. Exh. 4, p. 13. See also Wright Declaration, Def. Exh. 32; Interview of Davis, Def. Exh. 4, p. 4, in which Plaintiff admits that Wright reported her to management.

Contrary to the Plaintiff's contentions, there is no contradiction in the Agency's asserted reasons for referring Davis' misconduct to the OIG for investigation. In his affidavit, Blocker states that he was concerned about improper use of the system, not just about how the Plaintiff was able to access the system. Def. Exh. 11. The referral letter to the OIG, which was written on January 21, 2003 by Ronald Blocker, a few days after the Plaintiff's misconduct, repeatedly refers to improper, unofficial use and disclosure. Def. Exh. 13. There is no mention of the Plaintiff's illegally hacking into or accessing the K drive. Id. Rather, the alleged misconduct is described as accessing the K drive "for the purpose of learning what personnel actions were being initiated within the CIIS." The letter refers to the Plaintiff having informed another agent of the proposed promotions and instructing that agent on how to access the K drive. Id. It states that the drive is not utilized by the CIIS (only by the FPS Support Services Branch) for tracking personnel actions and related matters pertaining to them. Id. It further states that "Davis' action were not in the performance of HER official duties nor was SHE authorized by him (Blocker) to access the K drive." Id.

As set forth in paragraph A4 above, there is no genuine issue of material fact regarding the Agency's practice of reassigning persons to administrative duties pending an investigation. Although the Plaintiff asserts that she "will prove" that the Defendant varied from this practice on at least two occasions, she presents no evidence in her Opposition of this alleged variance.

The Plaintiff also contends that she can show pretext because employees Allison Poore and Malcolm Weeks, who were allegedly similarly situated, were not disciplined for engaging in the same misconduct. As a preliminary matter, Allison Poore was in the same protected class as the Plaintiff. She, too, had engaged in recent, prior EEO activity, in which she accused Ronald Blocker of discrimination. Blocker Declaration, Def. Exh. 12, p. 3, paragraph 9. See also Maltby Declaration, Def. Exh. 40.

Moreover, Weeks and Poore were not similarly situated to the Plaintiff. It is the Plaintiff's burden to show that all relevant aspects of her employment situation were nearly identical to those of the comparators. See, e.g., Neuren v. Adduci, Mastriani, Meeks & Schill, 43 F. 3d 1507, 1514 (D.C. Cir. 1995). Relevant factors to consider in a disciplinary case are the nature of the offenses committed, Holbrook v. Reno, 196 F. 3d 255 (D.C. Cir. 1999); and the employee's past disciplinary history, Kidane v. Northwest Airline, Inc, 41 F. Supp. 2d 12, 17, n 8 (D.D.C. 1999). See also Cruz v. Snow, 402 F. Supp. 2d 113 (D.D.C. 2005).

Here, unlike Poore and Weeks, the Plaintiff initiated and instigated the misconduct. Blocker Declaration, Def. Exh. 12, paragraph 9; Blocker Supplemental Declaration, Def. Exh. 39, paragraph 1-2; Wright Declaration, Def. Exh. 32; Weeks Declaration, Def. Exh. 33; Weeks Statement, Plaintiff's Exh. 2. Neither Poore nor Weeks accessed the information on their own. Id. Poore only accessed the drive upon the request of management in order to demonstrate Davis' actions. (Blocker Supplemental Declaration, Def. Exh. 39, paragraphs 1-2; Wright Declaration, Def. Exh. 33; Interview of Wright, Def. Exh. 4, pp. 13-14). Weeks was not even able to access the K drive. OIG Report, Def. Exh. 13;  Weeks Declaration, Def. Exh. 33.

Indeed, it is undisputed that Davis retrieved and publicly displayed the information to several co-workers, whereas Weeks and Poore did not. See Plaintiff's Response to Defendant's Statement of Undisputed Facts, paragraph 3; Defendant's Statement of Material Facts, paragraph

19

3; Affidavit of Johnson, Def. Exhibit 21, p. 1; Declaration of Anderson Wright, Def. Exh. 32,

paragraphs 2 and 3; EEO Counselor's Report, Def. Exh. 4, Interview of Cheryl Davis, pp. 4-7

and Interview of Anderson Wright, pp. 13-14. It is also undisputed that the Plaintiff copied the

information onto her user drive, whereas there is no evidence that Weeks or Poore did so. See

OIG Report, Def. Exh. 13; Defendant's Statement of Undisputed Material Facts, paragraph 3;

Plaintiff's Response to Defendant's Statement of Undisputed Facts, paragraph 3. Moreover,

both Weeks and Poore informed Blocker about the unprotected information, whereas the

Plaintiff did not. Blocker Declaration, Def. Exh. 12, paragraph 9. Instead, the Plaintiff told her

co-workers not to tell management. Weeks Statement, Plaintiff's Exh. 2; Blocker Addendum

Affidavit, Def.. Exh.. 11. Finally, Davis had a prior disciplinary record for similar misconduct

(Def. Exh.. 23-25), whereas Weeks and Poore did not have the prior disciplinary record.

## **CONCLUSION**

Plaintiff fails to present any probative specific evidence to controvert the Defendant's well-supported and documented motion. Speculation and mere allegations are not sufficient to survive summary judgment concerning establishment of a <u>prima</u> <u>facie</u> case or pretext. This action should be dismissed or summary judgment entered in Defendant's favor.

Respectfully submitted,

/s/ _____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

/s/ _____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/ _____
WYNEVA JOHNSON, DC Bar #278515
Assistant United States Attorney
Judiciary Center Bldg.
555 4th Street, N.W., Civil Division
Washington, D.C. 20530
(202) 514-7224

OF COUNSEL:
Katherine Johnson
Associate Legal Advisor
Office of the Principal Legal Advisor
U.S. Immigration and Customs Enforcement
U.S. Department of Homeland Security