EXHIBIT 39

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHERYL DAVIS,<br><br>Plaintiff<br><br>v.<br><br>MICHAEL CHERTOFF, SECRETARY<br>UNITED STATES DEPARTMENT OF<br>HOMELAND SECURITY,<br><br>Defendant | Civil Action No. 05-1423 (HHK) |

**SUPPLEMENTAL DECLARATION OF RONALD BLOCKER**

1. This clarifies the first sentence of Paragraph 9 of my August 24, 2006 declaration with respect to Allison Poore and Malcolm Weeks' accessing personnel information. To clarify, I was not aware that Allison Poore or Malcolm Weeks personally gained entry into the K drive or the personnel folder on it, without the instigation and active involvement of Ms. Davis. Weeks informed me on January 19 or 20, 2003 that Davis showed other criminal investigators, including him, personnel information, to include suspensions and promotions. I am aware of only one occasion on which Weeks himself viewed personnel information, which is described in the statement he provided to me on May 2, 2003.

2. Allison Poore never stated that she had personally accessed or reviewed the personnel folder on the K drive outside the presence of Davis, nor did I witness her doing so. Rather, according to Poore, Davis had shown her the disciplinary actions on the computer and how to access them. Poore never confessed to me or otherwise indicated that she had on her own

1

*RB 10/18/2006*

accessed and/or retrieved disciplinary files. However, as I recall, when Poore advised me in January of 2003 that Davis showed her how to access the K drive, Poore demonstrated to me the steps Davis showed her to gain access.

3. In January of 2003, Building 202 housed the Crime Analysis and Records Management Unit of my section. I had about 5 to 6 employees located in Building 202 at the time Davis was moved there. It was one of two buildings located at the Washington Navy Yard that was occupied by employees of the Federal Protective Service, National Capital Region. In addition to the employees of the Crime Analysis and Records Management Unit, employees of the Training and Quality Assurance sections were located in the building. It was right next to Building 74 in the same complex.

4. I did not consider Davis' office space in Building 202 to be substandard in any way. If Davis had mentioned to me that it was cold, as she alleges, I would have immediately notified the General Services Administration Building Manager regarding this issue. However, to the best of my recollection, Davis did not complain to me about the office being cold. There was a phone available to Ms. Davis in Building 202 for her to make and receive calls; however, she wanted her own phone line transferred to Building 202. This took some time and a request was made to our FPS coordinator located at the Navy Yard to the General Services Administration to have Davis' telephone line transferred to Building 202. I had no control over how long it took GSA to perform this service. However, I did request that this task be completed as soon as possible.

*AB 10/18/2006*

5. Ms. Davis had all the necessary tools available to her in Building 202 to perform her assigned duties.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on 10/18/2006

*Ronald A. Blocker* (signature)
RONALD A. BLOCKER

3

*AB 10/18/2006*