OAD P 9550.1 06/25/1993⬥    or: CPP☐C2;1= ;14= ** IL ** Final⬥

General Services Administration
Office of Management Services and Human Resources
Washington, DC 20405

INSTRUCTIONAL LETTER OAD IL-95-4
June 8, 1995

MEMORANDUM FOR HEADS OF SERVICES AND STAFF OFFICES
REGIONAL ADMINISTRATORS

FROM: MARLENE M. JOHNSON

ASSOCIATE ADMINISTRATOR
MANAGEMENT SERVICES AND HUMAN RESOURCES (C)

SUBJECT: Law Enforcement Availability Pay (LEAP)

EXHIBIT 41

1. Purpose. This letter provides for payment of availability pay for certain criminal investigators in GSA based on interim regulations issued by the U.S. Office of Personnel Management (OPM).

2. Background. Section 633 of the Treasury, Postal Service and General Government Appropriations Act for fiscal year 1995 (Public Law 103-329, September 30, 1994) amended title 5, United States Code, to provide for a new form of premium pay called "availability pay" for criminal investigators. Criminal investigators receiving availability pay are exempt from the minimum wage and overtime pay provisions of the Fair Labor Standards Act and may not receive administratively uncontrollable overtime (AUO) pay.

3. Effective Date. October 30, 1994 in the office of Federal Protective Service, Public Buildings Service. The law provides for a delayed effective date for criminal investigators employed in offices of Inspectors General who were not receiving 25 percent AUO pay.

4. Expiration Date. One year after signature, unless superseded.

5. Coverage. Criminal Investigators in the office of Federal Protective Service, Public Buildings Service who are certified for payment of LEAP.

6. Cancellation. None.

7. Filing Instructions. This letter should be filed with the Pay Administration and Position Classification Handbook, OAD P 9550.1

Law Enforcement Availability Pay

1. Availability pay. Availability pay is a new form of premium pay for criminal investigators who are required to work, or be available to work, substantial amounts of unscheduled overtime duty based on the needs of the agency. (Scheduled overtime is compensated with overtime pay.) Availability pay is fixed at 25 percent of the adjusted rate of basic pay. The availability pay provision in Section 633 of the Treasury, Postal Service and General Government Appropriations Act for fiscal year 1995 (Public Law 103-329, September 30, 1994) took effect on the first day of the first pay period beginning on or after October 30, 1994 (which was, in fact, the first day of a pay period). Inspectors General may delay implementation until September 1995. Criminal investigators receiving availability pay are exempt from

EX __13__ P __1__ OF __10__



the minimum wage and overtime pay provisions of the Fair Labor Standards Act and may not receive administratively uncontrollable overtime (AUO) pay.

2. Definitions.

a. Actual work hours. Actual work hours are those hours spent performing work including work officially ordered or approved plus unscheduled duty performed without specific supervisory preapproval, if circumstances require the criminal investigator to perform the duty to meet the needs of the employing agency, subject to agency policies and procedures including any requirements for after-the-fact validation or approval imposed by the Office of Federal Protective Service, Public Buildings Service and the Office of the Inspector General. See definition of unscheduled duty hours.

b. Adjusted rate of basic pay. The adjusted rate of basic pay means the rate of pay fixed by law or administrative action for the position held by an employee, including any applicable interim geographic adjustment or special pay adjustment for law enforcement officers under section 302 or 404 of the Federal Employees Pay Comparability Act of 1990, respectively, or locality-based comparability payment under 5 U.S.C. 5304, before any deductions and exclusive of additional pay of any other kind. The adjusted rate is indicated in block 20C of the SF 50, Notification of Personnel Action.

c. Availability hours. Availability hours are hours the investigator is determined by the employing agency to be generally and reasonably accessible to perform unscheduled duty based on the needs of the agency. In accordance with policies and procedures of the Office of Federal Protective Service, Public Buildings Service or the Office of the Inspector General, management will place the investigator in availability status by directing the investigator to be available during designated periods (e.g. evenings or weekends) to meet agency needs. Placement in availability status is not considered a work schedule change for the purpose of overtime compensated under 5 U.S.C. 5542 and 5 CFR 550.111. Availability hours may include hours during which an investigator places himself or herself in availability status to meet the needs of the agency, subject to applicable policies and procedures including any requirements for after-the-fact validation or approval.

d. Criminal investigator. Criminal investigator means a law enforcement officer, as defined below, who, based on OPM standards, is properly classified under the GS-1811 or GS-1812 series in the General Schedule Position Classification System.

e. Irregular or occasional overtime work. Irregular or occasional overtime work means overtime work that is not part of an employee's regularly scheduled administrative workweek. Overtime scheduled during the current workweek is irregular or occasional overtime work in contrast to regular overtime work.

f. Law enforcement availability pay. Law enforcement availability pay (LEAP) means availability pay. The two terms are interchangeable.

g. Law enforcement officer. Law enforcement officer (LEO) means an employee who:

(1) Is a law enforcement officer within the meaning of section 8331(20), for CSRS retirement, or section 8401(17), for FERS retirement, of title 5, United States Code;

(2) In the case of an employee who holds a secondary position, as defined in 5 CFR 831.902, and is subject to the Civil Service Retirement System, but who does not qualify to be considered a law enforcement officer within the meaning of section 8331(20), would so qualify if such employee had transferred directly to such position after serving as a law enforcement officer within the meaning of

EX ___13___ P __2__ OF __10__

OAD P 9550.1 06/25/1993 ▲  or: CPP□C2;l= ;14= ** IL ** Final▲                    Page 3 of 13

such section;

(3) In the case of an employee who holds a secondary position, as defined in 5 CFR 842.802, and is subject to the Federal Employees Retirement System, but who does not qualify to be considered a law enforcement officer within the meaning of section 8401(17), would so qualify if such employee had transferred directly to such position after performing duties described in section 8401(17) (A) and (B) for at least 3 years.

h. Overtime work. For any criminal investigator receiving availability pay, overtime work means work that is scheduled in advance of the administrative workweek--

(1) Over 10 hours on a day this is part of the investigator's 40-hour basic workweek; or

(2) Any hours on a day that is not part of the investigator's 40-hour basic workweek.

(3) Any work that would be overtime work but for the foregoing paragraphs (1) and (2) is compensated by availability pay instead of overtime pay or compensatory time.

(4) Availability pay is compensation for all hours of irregular or occasional overtime work plus the first two hours of work on regular workdays, regardless of whether scheduled before or during the administrative workweek.

i. Regular overtime work. Regular overtime work means overtime work that is part of an employee's regularly scheduled administrative workweek. Overtime work scheduled before the current administrative workweek is regular overtime in contrast to irregular or occasional overtime work which is scheduled during the current administrative workweek.

j. Regular workday. Regular workday means each day in the criminal investigator's basic workweek during which the investigator works at least 4 hours, excluding--

(1) Overtime hours compensated under 5 U.S.C. 5542 and 5 CFR 550.111 (i.e., regular overtime);

(2) Unscheduled duty hours compensated by availability pay under 5 U.S.C. 5545a; and

(3) Hours during which an investigator is

(a) engaged in agency-approved training;

(b) is traveling under official travel orders;

(c) is on approved leave;

(d) is on excused absence with pay; or

(e) absent on a paid holiday.

(4) Regular workdays are days within the basic workweek of 40 hours when the investigator performs at least 4 hours of actual work out of the 8 hours in the basic daily tour of duty.

k. Unscheduled duty hours. For the purpose of availability pay, unscheduled duty hours are those hours during which a criminal investigator performs work, or is determined by the employing agency to be

EX __13__ P __3__ OF __10__

OAD P 9550.1 06/25/1993▲  or: CPP□C2;1= ;14= ** IL ** Final▲                    Page 4 of 13

available for work, that are not - -

(1) Part of the 40-hour basic workweek of the investigator; or

(2) Overtime hours compensated under 5 U.S.C. 5542 and 5 CFR 550.111, which are regular overtime hours scheduled in advance of the investigator's administrative workweek, excluding any such hours that are the first 2 hours of overtime work on any day containing a part of the investigator's basic 40-hour workweek, as required by 5 CFR 550.111(f).

l. Voluntary opt-out. An employing agency may, at its discretion, approve a criminal investigator's voluntary request that the investigator generally be assigned no overtime work (including unscheduled duty) for a designated period of time because of a personal or family hardship situation. The investigator must sign a written statement documenting this request and his or her understanding that availability pay will not be payable during the designated opt-out period.

3. AUO Pay vs. LEAP. Availability pay replaces AUO pay for covered criminal investigators. Some of the major differences between AUO pay and availability pay are as follows:

a. Discretionary vs. nondiscretionary. The use of AUO pay is discretionary on the part of the employing agency. By contrast, availability pay is a guaranteed employee entitlement that the employing agency must provide, if the required conditions are met.

b. Percentage of basic pay. The level of AUO pay may vary from 10 to 25 percent of basic pay, depending on the average number of AUO hours worked per week. Availability pay is fixed at 25 percent of the adjusted rate of basic pay.

c. Hours of work. AUO pay is calculated based upon the number of hours actually worked. Availability pay also takes into account certain hours when a criminal investigator is determined by the employing agency to be available to work.

d. Overtime exclusions. While both AUO pay and availability pay are the sole compensation for irregular and occasional overtime work (i.e., overtime hours not scheduled in advance of an employee's administrative workweek), availability pay is also the sole compensation for any overtime work hours that are the first 2 hours of overtime work on any day containing part of the employee's basic 40-hour workweek (regardless of how those hours are scheduled).

e. Fair Labor Standards Act exemption. Authorization for availability pay automatically makes the investigator's position exempt from the overtime and minimum hours provisions of the Fair Labor Standards Act. AUO pay may cover both FLSA exempt and nonexempt investigators.

f. Severance pay. AUO pay is not basic pay for severance pay purposes, while availability pay is basic pay for severance pay purposes.

4. Coverage and Eligibility. Eligibility for availability pay is limited to criminal investigators, GS-1811. Employees in the Police series, GS-083, may not earn availability pay.

a. Criminal investigators only. The regulations make clear that the only General Schedule (GS) employees who qualify as criminal investigators for the purpose of availability pay are those properly classified in two occupational series GS-1811, Criminal Investigating, and GS-1812, Game Law Enforcement, under OPM standards. Congress indicated its intent that availability pay be limited to these two classification series of employees in the conference report on the bill that was enacted as

EX __13__ P __4__ OF __10__

Public Law 103-329. Federal Protective Officers are not eligible; they are also not covered by the special law enforcement officer retirement provisions of CSRS or FERS.

b. Law enforcement retirement. The definition of "law enforcement officer" in 5 U.S.C. 5541(3) generally requires that the employee be covered under the early retirement provisions for law enforcement officers. However, as specified in the definition above, an investigator may also meet that definition of law enforcement officers if he or she holds a supervisory or administrative position that has been officially approved as a "secondary position" under the regulations governing the law enforcement officer retirement provisions even though the employee is not actually covered under those early retirement provisions.

c. Other law enforcement pay. The definition of law enforcement officer for the purpose of availability pay is virtually identical to the revised definition of LEO under Sections 403, Special LEO Rates and 404, Special Percentage Adjustments, of the Federal Employees Pay Comparability Act of 1990 (FEPCA), except that members of the Senior Executive Service are excluded. (SES members are not eligible for premium pay of any kind.) Originally an LEO under FEPCA meant only employees covered by the special retirement systems in either the CSRS or FERS for law enforcement officers. The Technical and Miscellaneous Civil Service Amendments Act of 1992 (PL 102-378, October 2, 1992) expanded the definition of LEO in 5 USC 5541(3) to include individuals who serve in a supervisory or administrative law enforcement position but who do not meet the definition of law enforcement officers in 5 USC 8331(20), for CSRS, or 8401(17), for FERS, solely because they did not transfer directly to the supervisory or administrative position immediately after serving in a primary position.

d. SES exclusion. Members of the Senior Executive Service (SES) are not eligible to receive availability pay. Availability pay is one type of premium pay authorized in subchapter V of title 5, United States Code including overtime, night pay, Sunday pay, and holiday pay. No premium pay under subchapter V is applicable to SES members because they are excluded from the definition of "employee" in 5 U.S.C. 5541(2). The term "criminal investigator", as defined in the availability pay provision at 5 U.S.C. 5545a, is linked to the definition of "law enforcement officer" in 5 U.S.C. 5541(3), which, in turn, is linked to the definition of "employee" in 5 U.S.C. 5541(2). SES members earn special percentage adjustments under section 404 of FEPCA just like other LEOs but that is considered part of basic pay, not premium pay.

e. FLSA Exemption. Criminal investigators receiving availability pay are exempt from the minimum wage and overtime pay provisions of the Fair Labor Standards Act. They are compensated for regular overtime work under title 5 and for irregular or occasional overtime work (unscheduled duty) by availability pay.

5. Substantial hours requirement. A criminal investigator is eligible for availability pay only if the annual average number of hours of unscheduled duty per regular workday is 2 hours or more. Management must ensure that each criminal investigator's hours of unscheduled duty are sufficient to enable the investigator to meet the substantial hours requirement.

a. Formula. The annual average is computed by dividing the total unscheduled duty hours for the annual period (numerator) by the number of regular workdays (denominator). In computing average hours, the total unscheduled duty hours in the numerator include any unscheduled duty hours on a regular workday and any unscheduled duty hours actually worked by an investigator on days that are not regular workdays. The regular workdays in the denominator include any days in the criminal investigator's basic workweek during which the investigator works at least 4 hours. To continue to qualify for availability pay for the next twelve month period, the result must be greater than or equal to 2.

$$\text{Unscheduled duty hours} \geq 2$$

EX __13__ P __5__ OF __10__

Regular workdays

b. Unscheduled duty hours. Unscheduled duty hours are those hours during which a criminal investigator performs work, or is determined to be available for work, not counting the 40-hour basic workweek or overtime hours scheduled in advance of the investigator's administrative workweek. However, the first 2 hours of overtime work on any day of the investigator's basic 40-hour workweek always count as unscheduled duty hours regardless of whether scheduled before or during the current administrative workweek. For an investigator on a normal Monday through Friday basic workweek, overtime work on Saturday and Sunday counts as unscheduled duty hours if it is irregular or occasional overtime work, meaning it was scheduled during the current administrative workweek. If scheduled in advance of the current administrative workweek, work on Saturday and Sunday is considered regular overtime work and does not count as unscheduled duty hours.

c. Regular workday. For the computation of the annual average, a "regular workday" means each day in the investigator's basic workweek during which the investigator works at least 4 hours. Regular overtime hours, unscheduled duty hours compensated by availability pay, and hours during which an investigator is engaged in agency-approved training, is traveling under official travel orders, is on approved leave, or is on excused absence with pay or absent on a paid holiday do not count toward the 4 hour threshold.

(1) For the purpose of computing the annual average, management must determine which days within the basic workweek of 40 hours are regular workdays and which are not. This requires a manual or automated method of tracking hours in agency-approved training, travel under official travel orders, approved leave, excused absence, and holidays.

(2) For each day in the basic workweek, subtract from the basic work requirement of 8 hours any hours spent in training, travel, leave, paid holiday, or excused absence. If the difference is 4 hours or more, then that day is considered a regular workday. Hence, a paid holiday not worked can never be a regular workday. Similarly vacation days are not regular workdays.

(3) Regular overtime hours and unscheduled duty hours compensated by availability pay, whether actually worked or not, do not count toward the 4 hour threshold. The method of deducting absences for training, travel, leave, paid holiday, or excused absence from the 8 hour basic daily tour of duty automatically excludes regular overtime and unscheduled duty hours.

d. Availability hours. Available-to-work hours are those hours during which management determines the investigator is generally and reasonably accessible to perform unscheduled duty based on the needs of the agency. Generally, management will place the investigator in availability status, meaning that it directs the investigator to be available during designated periods to meet agency needs.

(1) Availability hours on days in the investigator's basic workweek count as unscheduled duty hours regardless of whether actually worked. Availability hours on days outside the investigator's basic workweek count as unscheduled duty hours only if actually worked. For an investigator on a normal Monday through Friday workweek, availability hours Monday through Friday count as unscheduled duty hours. Availability hours, if any, actually worked on Saturday or Sunday also count as unscheduled duty hours.

(2) Management should track the number of unscheduled duty hours actually worked. Although availability hours during which no work is performed may be used to justify entitlement to availability pay, it was the intent of Congress that the existence of this availability condition should not be interpreted by criminal investigators as license to reduce their actual work hours. Management should ensure that all investigators receiving availability pay are performing significant amounts of actual

EX __13__ P __6__ OF __10__

unscheduled overtime work, as opposed to being merely available to perform such work.

5. Certification and documentation.

a. Initial certification. Availability pay in the Office of Federal Protective Service, Public Buildings Service is retroactive to October 30, 1994 for criminal investigators who themselves certify their availability and who are also certified by management. Individuals should certify their initial availability on the form entitled "Law Enforcement Availability Pay, Individual Certification-Initial". Managers with delegated authority to do so, in turn, make the initial managerial certification for their employees on the form entitled "Law Enforcement Availability Pay, Initial Supervisory/Managerial Certification".

(1) The supervisory certification should be attached to a Request for Personnel Action (SF 52) and sent to the servicing personnel office. The Personnel Office will then implement availability pay for the listed employees, documenting it with SF 50 Notification of Personnel Action, NOAC 819, Availability Pay. Because of Privacy Act restrictions, individual investigators should not be shown the list of investigators certified by management.

(2) The availability pay forms illustrated in this instructional letter are not controlled forms and are not available from the National Forms and Publications Center in Fort Worth. Xerographic copies may be made locally and filled in by hand or by typewriter. For greater ease of use, the Office of Personnel will also make the forms available as document templates for the standard word processor in GSA.

b. Annual certification. Every twelve months the individual investigator and managers will certify their availability for the next twelve months, using the annual certification forms provided. No personnel action is needed to extend an entitlement to availability pay.

c. Involuntary decertification. Management may suspend payment of availability pay when it determines that an investigator has not been performing the required amount of unscheduled duty as assigned or reported. This reflects the intent of Congress that agencies would have the prerogative to remove availability pay if an investigator avoids work or availability.

(1) Availability pay may be suspended if an investigator is put on light duty, meaning that the investigator is in a duty status but unable to perform unscheduled duty for an extended period due to physical or health limitations.

(2) An involuntary suspension of availability pay as a result of a denial or cancellation of an availability pay certification is an adverse action under 5 U.S.C. 7512(4) and 5 CFR part 752. This means that availability pay is considered to be "pay" under 5 CFR 752.402(f), and its denial is subject to adverse action procedures. If ultimately denied, the servicing personnel office will terminate availability pay, documenting the change with SF 50 Notification of Personnel Action, NOAC 819, (Termination of) Availability Pay.

(3) A voluntary request that availability pay be suspended under the voluntary opt-out provision does not trigger adverse action rights.

6. Voluntary opt-out. GSA, at its discretion may approve a criminal investigator's voluntary request that the investigator generally be assigned no overtime work (including unscheduled duty) for a designated period of time because of a personal or family hardship situation such as the need to assist in caring for a chronically ill family member. This voluntary opt-out provision is intended to apply to situations where the expected duration of the designated period is long enough that the investigator would likely be unable to satisfy the annual average hours requirement.

EX 13 P 7 OF 10

a. Certification of unavailability. The investigator must sign a written statement documenting this request and his or her understanding that availability pay will not be payable during the designated period. The form provided in this instructional
letter may be used for this purpose.

b. Opt-out period. During the voluntary opt-out period, the employee generally will not be assigned any overtime work. Should overtime be required of the employee, the normal rules on overtime will apply. However, investigators would not be able earn AUO pay; the hardship situation that keeps them from performing unscheduled duty presumably makes them unavailable for administratively uncontrollable overtime.

c. Recertification. Once the hardship is over, the criminal investigator who opted-out must make another certification similar to the annual certification so as to resume or begin receiving availability pay after the designated voluntary opt-out period.

7. Earning overtime. Investigators earn overtime pay only for regular overtime work, that is, work scheduled before the beginning of the administrative workweek. Irregular or occasional overtime work, that is, work scheduled during the current administrative workweek, is compensated only by availability pay. The daily overtime threshold on a workday that is part of the basic workweek is 10 hours. On other days, any regularly scheduled work is compensated by overtime pay.

a. Compensatory time. Investigators cannot earn compensatory time off. Compensatory time can be granted only for irregular or occasional overtime work. Availability pay is the investigator's sole compensation for irregular or occasion overtime work.

b. Overtime threshold. The first 2 hours of work over 8 hours on a day basic workweek are compensated by availability pay. Overtime does not start until after 10 hours and even then only for regular overtime. On days not in the 40-hour basic workweek, investigators can earn overtime for any hours of work that are regular and even then only for regular overtime, i.e. scheduled before the beginning of the administrative workweek.

c. Regularly scheduled work. Regularly scheduled work, including regular overtime the days and hours that constitute an employee's "regularly scheduled administrative workweek". The terms "regular overtime" and "irregular or occasional overtime work" have the precise meanings given in the definitions above. Work scheduled for an employee before the particular administrative workweek begins is considered regularly scheduled. Work scheduled for an employee during the particular administrative workweek is not regularly scheduled. The timing of the scheduling rather than the pattern of occurrence determines whether work is regularly scheduled.

d. Sole compensation. Availability pay is the investigator's sole compensation for any amount of irregular or occasional overtime work during an administrative workweek, not just the first 10 hours. The investigator earns no additional compensation for 12, 15, or 20 hours of irregular or occasional overtime work in an administrative workweek. Of course, the investigator earns full availability pay even when unscheduled duty hours actually worked in a particular workweek total less than 10 hours. Overtime pay is earned hour for hour but only for regular overtime after 10 hours on days in the 40-hour basic workweek and for any regularly scheduled hours on other days.

e. Hourly overtime rate. The overtime rate for investigators is one and one half times the hourly adjusted rate of basic pay--up to the applicable maximum rate. The maximum overtime rate is either the employee's straight time rate or one and one-half times the hourly adjusted rate for GS-10 step 1 on the

EX __13__ P __8__ OF __10__

applicable rate schedule, whichever is higher. The hourly adjusted rate includes a LEO special salary rate, interim geographic adjustment rate, locality rate, or special percentage adjustment.

f. Adjusting work schedules. Nothing in this instructional letter bars management from adjusting an employee's basic workweek to avoid scheduled overtime. Depending on actual work requirements, management may adjust the employee's basic workweek from Monday through Friday to Tuesday through Saturday or to Sunday through Thursday, so long as this is done before the beginning of the particular administrative workweek.

g. Travel time. Time in a travel status outside the investigator's regularly scheduled administrative workweek is covered by availability pay, regardless of whether the travel time counts as available hours worked. Investigators may not earn overtime pay or compensatory time off for official travel time.

8. Relationship to other payments. Availability pay amounts to 25 percent of the criminal investigator's adjusted rate of basic pay. The adjusted rate itself may include a law enforcement special rate, an interim geographic adjustment or special pay adjustment for law enforcement officers or locality-based comparability payment.

a. Cumulative entitlements. Pay entitlements for law enforcement officers are largely cumulative, and availability pay is computed on top of all other entitlements. An investigator may be entitled to a LEO special rate (for investigators below GS-11) plus a locality adjustment plus availability pay. In the higher grades, investigators do not earn special rates but do earn locality pay or special percentage adjustments plus availability pay.

(1) Some investigators earn both special rates and special percentage rates (or a locality rate where that is higher). Others do not earn special rates but earn a locality rate or a special percentage adjustment. Availability pay is 25 percent of their other entitlements.

(2) Investigators below GS-11 earn special rates of pay under section 404 of FEPCA which are their unadjusted basic rates of pay. Investigators in 4 metropolitan areas, regardless of grade, are also entitled to special percentage adjustments of 8 or 16 percent. Thus a GS-9 investigator in Los Angeles would earn a special rate one step above the corresponding rate on the regular General Schedule plus a special percentage adjustment of 16 percent on top of that special rate. Availability pay is 25 percent of the total of the special rate and the special percentage adjustment.

(3) Investigators in the other 23 locality adjustment areas within the contiguous United States earn locality pay. (In four metropolitan areas, locality percentages are higher than the original LEO special percentage rates of 4 percent or 8 percent.) In Washington, DC, an investigator at GS-13 earns a locality rate of 4.23 percent plus 25 percent availability pay on top of that.

(4) The Office of Personnel will issue pay schedules showing the effect of these various entitlements in all the locality adjustment areas in late 1994 and in 1995. The number and geographic extent of the locality adjustment areas are different in each year.

b. Absences. Availability pay is paid only for periods of time during which the investigator receives basic pay. An investigator does not earn availability pay during periods of Leave without Pay (LWOP) or absence without official leave (AWOL) but resumes it when he or she returns to duty. other absences have different effects.

(1) A criminal investigator who is eligible for availability pay continues to receive it while attending agency-sanctioned training, on agency-ordered travel status, on agency-approved leave with pay, or on

excused absence with pay for relocation purposes. Such absences are still significant for determining regular workdays, the denominator in the eligibility formula described above.

(2) Availability pay continues while the employee is on annual leave, sick leave and other paid leave, however long.

(3) The law provides that agencies may, at their discretion, provide availability pay to criminal investigators during training that is considered initial, basic training usually provided in the first year of service (such as at Glynco, Georgia). This policy decision is left for the Office of Federal Protective Service, Public Buildings Service and the Office of the Inspector General. Whatever the rule adopted, within each of those organizations, it should apply in a nondiscretionary manner to all such employees.

(4) The law provides that agencies may, at their discretion, provide for the continuation of availability pay when a criminal investigator is on excused absence with pay. For the sake of consistency and ease of payroll administration, GSA policy is to continue availability pay for all excused absence, not just during relocation. (Payment is mandatory during relocation).

(5) The amount of availability pay payable to a criminal investigator for a pay period is not affected by the occurrence of a paid holiday during that period.

(6) A suspension with pay does not affect availability pay. The employee is still in a duty status.

(7) The Federal Employees Compensation Act (FECA) provides, separate from long term workers compensation benefits, that an employee's regular pay may be continued for up to 45 calendar days of wage loss due to disability and/or medical treatment following a traumatic injury on-the-job. Continuation of pay (COP) is approved by the Department of Labor. Availability pay is included in the pay continued during a period of COP.

c. Retirement contributions. Availability pay is part of the investigator's salary for retirement purposes. The payroll system takes retirement deductions from the adjusted rate plus availability pay. This full salary is used in retirement computations of the "high three" average.

l Law Enforcement Availability Pay l
l Initial Supervisory/Managerial Certification l
l l
l This is an initial certification of Criminal Investigators for Law Enforcement Availability l
l Pay under 5 USC 5545(a). Criminal Investigators covered by this certification have l
l certified their availability for unscheduled duty in the personal certifications attached. I l
l certify that over the course of the twelve month period beginning October 30, 1994. I l
l expect the Criminal Investigators listed below to average at least 2 hours of l
l unscheduled duty per regular workday. l
l TITLE AND SIGNATURE OF CERTIFYING OFFICIAL l DATE l
l l l
l l l
l l l
l l l l
l Name ISSAN l Correspondence Symbol l
l l l l
l l l l
l l l l

EX ___13___ P ___10___ OF ___10___

FOR OFFICIAL USE ONLY

## REPORT INSERT – OFFICE OF INSPECTOR GENERAL
## MEMORANDUM OF INTERVIEW

| INTERVIEW OF: | DATE OF INTERVIEW |
|---|---|
| Ronald Blocker | February 4, 2003 |

On February 4, 2003, the Reporting Agent interviewed Federal Protective Service (FPS), Supervisory Criminal Investigator (CI) Ronald Blocker. During the interview Blocker provided the following information:

Between January 19, 2003 and January 20, 2003, FPS, CI Malcom Weeks informed Blocker that FPS CI Cheryl DAVIS went around the office and showed other CI's personnel data SHE located on the K drive. Weeks stated that the information DAVIS showed him included suspension letters and CI's eligible for promotion. After DAVIS showed Weeks the data SHE said don't say anything to management.

On January 21, 2003, FPS CI Allison Poore met with Blocker. Poore logged on to the K drive and retrieved various disciplinary actions. Poore informed Blocker that after DAVIS showed Poore the disciplinary actions SHE said don't say anything to management.

On January 22, 2003, Blocker met with DAVIS and informed HER that he was aware that DAVIS gained access to the K drive. As a result, Blocker was reassigning her to room 202, pending an investigation. DAVIS informed Blocker that accessing the K drive was not unauthorized. Blocker then went to FPS, Computer Coordinator Deborah Norton, and requested that DAVIS' access to the computer be revoked.

| FILE NUMBER | REPORTING AGENT | DATE PREPARED | SUPERVISOR |
|---|---|---|---|
| I030065 | SA Crystal L. Johnson | February 4, 2003 | |

OTHER ADMINISTRATIVE INFORMATION (Use continuation sheet, GSA Form 9506-C)

General Services Administration          FOR OFFICIAL USE ONLY          GSA FORM 9506-A (Rev 7-98)