UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHERYL DAVIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-1423 (HHK) |
| ) | |
| MICHAEL CHERTOFF, SECRETARY, ) | |
| U.S. DEPARTMENT OF HOMELAND SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | November 21, 2006 |

**PLAINTIFF'S SURREPLY MEMORANDUM OF LAW IN OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Cheryl Davis, the plaintiff in the above matter, (hereinafter Ms. Davis or the plaintiff), by her counsel, hereby files this surreply brief to the defendant's brief in reply to the defendant's motion to dismiss and/or for summary judgment filed on November 3, 2006.

In that brief the defendant relied on citations to the record that were simply unsupported. It also erroneously claimed that there were no legitimate disputes over facts that Ms. Davis had placed in dispute. Interpreting these facts, and inferences drawn from these facts, in Ms. Davis' favor, which the Court must do in deciding a summary judgment motion, supports Ms. Davis' prima facie case of retaliation, as well as the fact that the defendant's reasons for taking the actions against her were pretexts for retaliation. Contrary to the defendant's assertions in its reply brief, the issues that Ms. Davis has legitimately placed in dispute include the following:

1. <u>There is a legitimate dispute as to the reasons why the defendant disciplined Ms. Davis</u>.

The Court should not accept the defendant's argument that it did not discipline Ms. Davis because she accessed the personnel information on her "K" drive. The actual wording of Ms. Davis' letter of warning from the decision maker, Ronald Blocker, shows that the defendant did use this as a reason for disciplining her. The letter provides: "Unauthorized disclosure of official information by your position *and your access to the K:\drive* is a serious offense that impacts on your integrity and judgment as a Special Agent and is conduct that will not be tolerated." (Def. Ex. 17, p. 2)(Emphasis added).

A reasonable interpretation of this letter is that Mr. Blocker disciplined Ms. Davis for *both* unauthorized disclosure of official information *and* by the fact that she accessed the K drive. (See p.3 of the defendant's reply brief and Def. Ex. 17). Because the defendant cannot dispute that Ms. Davis was authorized to access the K drive, the agency reprimanded her for conduct that she was authorized to engage in. This fact alone would support her claims that the reasons for the reprimand were pretexts for retaliation.

2. <u>Poore and Weeks were valid comparators who were treated less harshly than Ms. Davis</u>

Contrary to the defendant's arguments, (Def.'s Reply Brief., p. 20-22), there is a legitimate dispute that Davis' co-employees, Malcolm Weeks and Allison Poore, were treated differently from Ms. Davis. There is nothing in the OIG report or any other information that the defendant has supplied that shows that Weeks and Poore's computers were examined by a computer specialist even they both conceded to accessing the same information on their computer as Davis accessed. (See Def. Ex. 13). From this disputed fact, the Court could draw an

2

inference that Weeks and Poore were similarly situated yet treated less harshly than Ms. Davis. This supports both her prima facie case of retaliation and the fact that the reasons for the defendant's conduct were pretexts for retaliation.

Ms. Davis also has evidence that shows that Ms. Poore was a valid comparator even though Poore had filed an EEO charge against Mr. Blocker a few years prior to Ms. Davis' reassignment in January 2003. (See Reply Brief, p. 16 and Exs. 23-25). Ms. Davis has filed a declaration based on her personal knowledge that Ms. Poore also experienced retaliation after filing this complaint. Poore was the only investigator in the office who was not promoted in January 2003. (Ex. 1, Davis Declaration, ¶¶3, 5 and 9). The defendant also subsequently investigated Poore for leave violations in 2003 and proposed her for termination in 2004. (Ex. 1, Davis Declaration, ¶¶3, 5 and 9).

In view of the adverse actions the agency had pending against Poore, the fact that the agency did not also retaliate against Poore for accessing the same computer information as Ms. Davis is not important for the purposes of determining whether Poore was a valid comparator. The fact is, even though it appears that Poore did have pending EEO complaints, the agency subjected her to other adverse actions that closely followed the filing of those complaints.

The adverse treatment that Ms. Poore received in close proximity to her EEO activity enhances her status as a comparator to Ms. Davis because it demonstrates a pattern on the agency's part of disciplining employees who file EEO complaints. Because the agency decided to use Poore as a "witness" against Ms. Davis regarding the alleged unauthorized access incident, and thus felt obliged not to discipline Poore on that occasion for engaging in the same conduct as

Ms. Davis, does little to undercut Poore's status as a valid comparator to Davis. (Ex. 1, Davis Declaration, ¶¶3, 5 and 9).

    3.    <u>The defendant has no evidence to support the claim that Ms. Davis either viewed or copied employees' disciplinary records</u>

Another argument that the defendant proffers to justify its adverse treatment of Ms. Davis involves its claim that Ms. Davis admitted viewing other employee disciplinary records. (See Reply Brief, p. 4). There is no basis in the record for such an argument. In fact, contrary to the defendant's contentions, Ms. Davis did not state in her deposition (Exhibit 8, p. 67:1-25) that she viewed the disciplinary actions of co-workers. She only stated that the records were generally there in the files she discovered she could access. Further, the OIG did not find she viewed the information. (Ex. 13). Even Blocker does not claim that she viewed these records. (Ex. 17).

Similarly, there is nothing in the record that supports the defendant's claim that Ms. Davis "copied" any personnel information. (See pp. 20-22 of Reply Brief). The record merely shows that Ms. Davis accessed information in the "K" drive and that her computer showed a trace of the access on her user drive as it does with any access. She did not download or copy any other part of these records to her personal computer or the defendant's network as the defendant's imply. The defendant's arguments that its adverse treatment of Ms. Davis was somehow justified by her downloading or viewing disciplinary record is just not supported by the evidence and should be summarily rejected by the Court.

    4.    <u>Ms. Davis did not hide the fact that she accessed the "K" drive information</u>

The defendant also contends that the undisputed facts show that Ms. Davis was secretive about the fact that she accessed the information on her "K" drive. The defendant contends that this conduct shows some consciousness on Ms. Davis' part that her activity was not authorized.

However, on p. 19 of its reply brief the defendant states that Ms. Davis publicly displayed the information on the computer. This statement contradicts any contention that Ms. Davis's access was secretive. Moreover, Ms. Davis herself has never tried to hide the fact that she was open about her access to the information. (See Def. Exh. 4, p. 5).

    5.    <u>The re-assignment cost Ms. Davis career opportunities</u>

The defendant further claims that Ms. Davis has not submitted sufficient evidence from which the Court may draw an inference that her re-assignment while she was under investigation denied her career opportunities. The defendant thus claims that the actions against her would not be severe enough to dissuade a reasonable person from engaging in EEO activity as required to meet the <u>Burlington Northern</u> test. <u>Burlington Northern & Santa Fe Railway Co. v. White</u>, 126 S.Ct. 2405, 2410-1 (2006); (See discussion in Reply Brief, p. 15). In response to this argument, Ms. Davis has filed a supplemental declaration that she missed out on a career ladder promotion the next year because her investigative duties were removed during the re-assignment. (Ex. 1, Davis Declaration, ¶¶4, 6, 7, 8 and 10). This prevented her from obtaining the experience necessary to be eligible for this promotion.

In contrast, Anderson Wright, another male officer who received a promotion to GS-12 with Ms. Davis in 2002, was promoted in 2004. (Ex. 1, Davis Declaration, ¶¶4, 6, 7, 8 and 10). The agency had not removed Wright's investigative duties during this period. Thus, he was able to gain the experience necessary to receive the promotion. (Ex. 1, Davis Declaration, ¶¶4, 6, 7, 8 and 10).

6. <u>Ms. Davis lost some overtime opportunities during her re-assignment</u>

Contrary to the defendant's contention, the record also supports an inference that Ms. Davis' lost overtime opportunities during her re-assignment and thus some monetary loss during that time. (See Def.'s Reply Brief, pp. 6-9). Ms. Davis' initial opposition to the defendant's motion provided citations to the record indicating that, prior to the re-assignment, she regularly received overtime as part of the investigative duties of her job. (See Def. Exh. 4, pg 10, EEO Counselor's Report; Def. Exh. 5, pg 1, Pl. Formal Complaint of Discrimination and Def. Exh. 21, pg 2-3, Affidavit of Ira Johnson.) This evidence also indicated that, during her re-assignment, she was unable even to apply for overtime assignments.

When viewed in her favor, Ms. Davis has placed sufficient facts in dispute that she was denied overtime assignments during her re-assignment and hence suffered some monetary loss as a result. (Reviewing court must view all inferences in a light most favorable to the non-moving party, <u>Adickes v. S.H. Kress & Co</u>., 398 U.S. 144, 157 (1970), and "assume the truth of the non-movant's evidence." <u>Bayer v. U.S. Dept. of Treasury</u>, 956 F.2d 330, 333 (D.C. Cir. 1992); <u>Langdon v. Dept. of Health and Human Services</u>, 959 F.3d 1053, 1058 (D.C. Cir. 1992)). This is true even though there may be some disputes about the precise amount of her loss. In view of the fact that Ms. Davis lost some overtime, and hence suffered a monetary loss, during the time the defendant re-assigned her, it is clear that the re-assignment qualified as an adverse action sufficient to support a prima facie case of retaliation even under the strictest pre-<u>Burlington Northern</u> test.

7. <u>There was a sufficient temporal proximity between Ms. Davis's EEO complaint and the re-assignment to support a prima facie case</u>

Lastly, the defendant's reply alleged that there was a four month time lapse between Ms. Davis' EEO activity and her re-assignment and that this lapse was insufficient to support a prima facie case of retaliation. (Def.'s Brief, pp. 16-17). The defendant cites Clark County School District v. Breeden, 532 U.S. 268 (2001) and three other court cases, Hughes v. Derwinski, 967 F.2d 1168 (7th Cir. 1992); Woods v. Bentson, 899 F.Supp. 179 (E.D. Pa. 1995) and Parrot v. Cheney, 748 F.Supp. 312 (D.Md. 1989), in support of this legal argument. The Court must reject this argument as well.

First, the defendant is just wrong on the facts. In this case, there was *no* time lapse between Ms. Davis's EEO complaint and the re-assignment. In fact, her EEO claim had just started to be investigated. (See Exhibit 2 attached). Moreover, that investigation continued until at least July 2003—or well after her re-assignment ended.

Because there was no time lapse between Ms. Davis' EEO activity and her disciplinary re-assignment, there is a clear temporal proximity between that activity and the defendant's adverse actions to support a prima facie case. Cones v. Shalala, 199 F.3d 512, 521 (D.C.Cir. 1999)(nine month gap between initial complaint filing and adverse action held to be a close proximity to establish a prima facie retaliation case); Buggs v. Powell, 293 F.Supp.2d 135, 149-151 (D.D.C., 2003)(if EEO investigation is ongoing, there is no time lapse between filing and the adverse action). See also, Brodetski v. Duffey, 199 F.R.D. 14, 20 (D.D.C., 2000)(up to one year gap may be sufficient) and Hayes v. Shalala, 902 F.Supp. 259, 264 (D.D.C.1995) (causal connection existed based on the time plaintiff first became vulnerable to retaliation, even though that time occurred three years after plaintiff engaged in protected activity).

Second, even if the Court finds that there was a lapse between Ms. Davis's EEO activity and discipline, Ms. Davis has other evidence that supports her prima facie case because it suggests a connection between her filing and the actions taken against her. This evidence includes the pretextual nature of the allegations against her and the difference in treatment that she received as compared to other employees who had engaged in similar conduct. The courts have found such evidence, combined with a four or more month temporal proximity with an employee's EEO activity, is sufficient to establish a prima facie case of retaliation. Buggs v. Powell, 293 F.Supp.2d at 149-151.

Third, the Breeden case the defendant cites in support of its arguments is distinguishable from this case. In that case, the Supreme Court dismissed Breeden's claims because it found that her original internal corporate complaint of sex harassment did not have a good faith basis and hence was not entitled to protection from retaliation. The defendant cannot make a similar claim here because Ms. Davis' use of the official agency EEO complaint process is entitled to absolute protection under Section 704(a) of Title VII, 42 U.S.C. §2000e-3(a). Parker v. Balt. & Ohio R. Co., 652 F.2d 1012, 1019-20 (D.C.Cir.1981); Johnson v. Holway, 439 F.Supp.2d 180, 222 (D.D.C., 2006). Breeden's internal corporate complaint did not have the same legal protections. Id.

It is true that Breeden also questioned whether a 20-month the time lapse between the employee's subsequent EEOC complaint and an adverse action in the form of a transfer could establish a causal connection between the two. Clark County School District v. Breeden, 532 U.S. at 274. However, that case did not establish an absolute rule that four months constitutes too long of a time lapse between an employee's EEO activity and an adverse action to support a

prima facie retaliation case. In fact, the District of Columbia courts have repeatedly held that a time lapse of up to one year, along with other evidence, may still be sufficient to support such a claim.  Cones v. Shalala, 199 F.3d at 521; Buggs v. Powell, 293 F.Supp.2d at 149-151; Brodetski v. Duffey, 199 F.R.D. at 20; Hayes v. Shalala, 902 F.Supp. at 264.  These cases stand in direct contrast to the court cases from other jurisdictions the defendant has cited.  The Court here should not follow those cases.

**CONCLUSION**

For all the foregoing reasons, the defendant simply has not met its burden to present overwhelming and uncontroverted evidence through its summary judgment submissions that retaliation has not occurred in this case. In order to obtain judgment as a matter of law that is it what the defendant must do. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148 (2000).  The Court must deny the defendant's motion to dismiss and/or for summary judgment.

Respectfully Submitted,
FOR THE PLAINTIFF
CHERYL DAVIS,

By:    /s/ Jonathan L. Gould
Jonathan L. Gould
DC Bar # 491052
Bianca Karim
DC Bar # 497834
KESTELL & ASSOCIATES
1012 14TH Street, NW, Suite 630
Washington, DC 20005
(202) 347-3889
(202) 347-4481
email jgould@igc.org